UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF CONNECTICUT

———————————————————————

| | | |
|---|---|---|
| EDUARDO DIAZ-BERNAL, et al. | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 3:09-cv-1734-SRU |
| | § | |
| | § | |
| JULIE MYERS, et al., | § | |
| | § | |
| Defendants. | § | |

# Reply in Support of United States' Renewed Partial Motion to Dismiss

Ignoring a raft of circuit court cases holding that the United States' hiring, supervising, and training practices are discretionary, and also the discretion granted to and maintained by ICE to make such personnel decisions, Plaintiffs attempt to limit that discretion by creating a number of false restrictions.

Plaintiffs first construct a false "constitutional" limitation. They conflate the conduct subject of this motion—how ICE hired, trained, and supervised—with conduct they challenge separately through claims of false arrest and false imprisonment. Based on this, Plaintiffs argue

that how ICE hired, trained, and supervised, somehow involves the Fourth Amendment. This attempted fusion fails. Plaintiffs have not alleged, nor could they, that ICE employees violated the Constitution in how they hired, trained, and supervised. Accordingly, only statutes and regulations could possibly limit ICE's personnel decisions.

But the applicable statues and regulations allow discretion in how ICE hires, trains, and supervises. The regulations governing these personnel choices provide but one mandatory directive: agents must attend certain basic training. Plaintiffs cannot plausibly assert that ICE did not comply with this requirement. Plaintiffs further contend that a field manual and immigration-enforcement operational plan extinguish ICE's discretion in how it trains. But these informal guides cannot undermine the discretion which Congress granted and agency regulations maintain. Further, by its very terms the field manual is intended as a guide not to bind the agency, and courts have refused to entitle such manuals with the force of law. And an operational plan is just that: a plan, subject to change.

Finally, Plaintiffs argument that ICE's hiring, training, and

2

supervising decisions were not based on policy considerations simply ignores many circuit cases to the contrary.  And their contention that those decisions were not based on policy considerations because they were negligent is simply wrong and directly contradicted by decades of Supreme Court and circuit-court case law.

## 1.  Plaintiffs do not, and can not, allege that how ICE hired, trained, and supervised is limited by the Fourth Amendment.

Neither the United States nor its employees has discretion to violate the Constitution.  But while the Constitution may limit how law-enforcement officers conduct arrests, the conduct of employees making personnel decisions is not subject to Fourth Amendment limitations.

The discretionary function analysis focuses on "the nature of the challenged conduct."[1]  Plaintiffs have alleged not that ICE supervisors *actually* violated the constitution, but that the policies they enacted *resulted* in "widespread" violations constituting "constructive acquiescence in their roles as supervisors."[2]  Plaintiffs further allege

---

[1] *Berkovitz v. United States*, 486 U.S. 531, 536 (1988).

[2] Pls. Br. at 7.

that ICE supervisors "knew of the likelihood" that "improperly supervised [fugitive operation teams] would commit constitutional violations" and that they "neglected to change the training policies to prevent further constitutional violations."[3]  Thus, according to Plaintiffs' own allegations, they challenge hiring, training, and supervision practices which would have, if conducted properly, prevented future constitutional violations.  These allegations do not raise constitutional limitations.  The Fourth Amendment cannot be violated by negligence.[4]

In direct contravention to their explicit and distinct allegations, Plaintiffs attempt to fuse the conduct of the supervisors with that of the fugitive operation teams in a forced attempt to erect constitutional limitations on the supervisors' personnel decisions.  Multiple circuit courts have rejected this construct, holding that the discretionary function exception bars claims for the negligent supervision of employees whose conduct also allegedly violated the constitution.[5]

---

[3]  *Id.* at 8.

[4]  *Dodd v. City of Norwich*, 827 F.2d 1, 7-8 (2d Cir. 1987) ("The Fourth Amendment, however, only protects individuals against 'unreasonable' seizures, not seizures conducted in a 'negligent' manner.") Aside

[5]  *See, e.g., Nurse v. United States*, 226 F.3d 996, 1001-03 (9th Cir. 2000) (finding discretionary function exception barred claim for negligent supervision and training

These cases explicitly dismissed claims of negligent supervision and hiring of employees alleged to (and in *Attallah* proven to) have violated the Constitution.

Plaintiffs rely on three easily-distinguished district- court decisions. Plaintiffs first rely on *El-Badrawi*.[6] But in *El-Badrawi*, the plaintiff did not allege negligent hiring, training, and supervising.[7] Instead, the plaintiff sued the United States alleging false arrest and imprisonment, malicious prosecution, abuse of process, and intentional infliction of emotional distress.[8] Finding that all of these claims "arose out of" the plaintiff's initial arrest and detention, even though after the arrest the plaintiff had agreed to voluntary departure, the court found that the discretionary function exception did not bar any the claims.[9] Plaintiffs pluck the phrase "arise out of" and apply it not to *post-arrest* conduct, as

of customs agents, but remanded claims of false imprisonment, invasion of privacy, and negligence based on agents' acts); *Attallah v. United States*, 955 F.2d 776, 784 (1st Cir. 1992) (holding that discretionary function exception barred claim for negligent supervision of customs agents who were convicted of assault, robbery, and murder).

[6] *El-Badrawi v. Dep't of Homeland Sec.*, 579 F. Supp. 2d 249 (2009).

[7] *Id.* at 264.

[8] *Id.*

[9] *Id.* at 275.

in *El-Badrawi*, but to personnel decisions made *before* Plaintiffs' arrest. Involving only claims arising from arrest and post-arrest conduct, *El-Badrawi* does not support Plaintiffs merging ICE supervisory employees' personnel decisions made well before the New Haven Operation, which did not involve the Fourth Amendment, with the agents' conduct during operation itself, which, of course, is governed by the Fourth Amendment.

Plaintiffs' two other district-court citations are also unhelpful to their claim. Although negligent supervision was a claim in *Limone*, the court failed to specifically address that claim.[10]   Finally, Plaintiffs cite to *Wormley v. United States*.[11]   But a more recent case from the same court directly conflicts with that decision.  In *Tabman v. United States*, the court held that the discretionary function exception barred the plaintiff's claim challenging the FBI's decision to fire him despite his allegation that the FBI had also "violated a liberty interest protected by the Fifth Amendment" by removing him.[12]

---

[10] *See Limone v. United States*, 271 F. Supp. 2d 345, 354-357 (D. Mass. 2003).

[11] 601 F. Supp. 2d 27, 43 (D.D.C. 2009).

[12] No. 08-2203, 2010 WL 2505896, at *5-6 (D.D.C. June 22, 2010).

6

The conduct subject to this motion—ICE's decisions to hire, train, and supervise—is simply not restricted by the Fourth Amendment.

## 2.  Having complied with all mandatory training regulations, ICE otherwise exercised discretion in training, supervising, and hiring its agents.

Plaintiffs first allege that certain ICE agents did not attend mandatory basic training as required by 8 C.F.R. § 287.1(g).[13]   There is no dispute that these regulations are mandatory.  But Plaintiffs' allegation that ICE violated these regulations is not plausible.[14]  The list of training classes the agents attended attached to Plaintiffs' response is incomplete.[15]  Two of the agents, Ronald Preble and Stephen Riccardi, are listed as only having attended an advanced training program.  A basic training program, however, is a prerequisite for this class.  Before Congress created the Department of Homeland Security, both Preble and Riccardi attended United States Border Patrol

---

[13] Pls. Br. at 19-20.

[14] *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

[15] Ex. 1.

Integrated Training Program.[16]  This training class was the basic-training class offered at the U.S. Border Patrol Academy.[17]  Thus, under 8 C.F.R. § 287.1, the "Border Patrol Basic Training Course after 1977" is "basic immigration law enforcement training."

Plaintiffs also allege that Derek Moore failed to receive basic law-enforcement training.[18]  As listed in Plaintiffs' exhibit, Moore attended the Immigration and Customs Enforcement Deportation Training Program.[19]  This class is not specifically listed in section 287.1.  But the class qualifies as "training substantially equivalent thereto as determined by the Commissioner of CBP or the Assistant Secretary for ICE with respect to personnel."[20]

Accordingly, all of the ICE agents involved in the New Haven Operation attended basic law-enforcement training.  Having satisfied the only mandatory requirement governing training practices, ICE has

---

[16]  Ex. 2, Decl. of Joseph T. Wolf & Attach. 1 & 2, Training Histories of Steven Riccardi and Ronald Preble.

[17]  Ex. 2, Decl. of Joseph T. Wolf.

[18]  Pls. Br. at 20.

[19]  Ex. 1.

[20]  Ex. 2, Decl. of Joseph T. Wolf.

discretion in how it otherwise trains its agents.

Plaintiffs attempt to cabin this discretion by asserting that the Deportation Officer Field Manual limits ICE's discretion to train.[21] This attempt fails because the field manual is not "established government policy," and therefore, under *Gaubert*, does not limit ICE's discretion.[22]

Under *Irving v. United States*, this Court need not consult the field manual because the promulgated regulations "unambiguously define" the nature of the challenged training decisions.[23]

Trying to escape *Irving*, Plaintiffs misread it.  They argue that because the field manual "requires" that ICE supervisors "ensure all officers will receive all training, equipment, and leadership necessary to safely and effectively conduct fugitive operations" that ICE has chosen to govern low-level officers through regulations but supervisors through the manual.[24]  According to Plaintiffs, this compels an inquiry into the "policies" of the field manual.  There are two flaws in this argument.

---

[21]  Pls. Br. at 20-26.

[22]  *See Gaubert v. United States*, 499 U.S. 315, 323-24 (1991).

[23]  *See Irving v. United States*, 162 F.3d 154, 165 (1st Cir. 1998).

[24]  Pls. Br. at 24-26.

First, only a policy that "specifically prescribes a course of action for an employee to follow" can remove an employee's discretion.[25]  Further, a policy must convey a "fixed or readily ascertainable standard" governing an employee's conduct.[26]  "Ensuring" that officers have all they need to "safely and effectively do their jobs" fails these tests; it is not specific enough to remove supervisor's discretion.  Second, *Irving* rejects this approach.  *Irving* states that informal rules need only be examined when the *regulations themselves* create ambiguity:

> We can well imagine that resort to *informal indicia* may be justified either when an agency's *legislative rules* define the conduct of some employees, but not others (e.g., when the *regulations* define the conduct of a regional official but not of a subordinate whose negligence is alleged to have caused the plaintiffs injury), or when *legislative rules* create ambiguity.[27]

By contrast, when the statute and regulations "clearly speak to the

---

[25] *Berkovitz v. United States*, 486 U.S. 531, 536 (1988).

[26] *See, e.g.*, *Powers v. United States*, 996 F.2d 1121, 1125 (11th Cir. 1993) (holding that regulation did not defeat discretionary function exception because it failed to provide a "fixed or readily ascertainable standard"); *Kiehn v. United States*, 984 F.2d 1100, 1106-07 (10th Cir. 1993) ("[I]f a government official in performing his statutory duties must act without reliance upon a fixed or readily ascertainable standard, the decision he makes is discretionary and within the exception of the Tort Claims Act.") (quoting *Barton v. United States*, 609 F.2d 977, 979 (10th Cir. 1979)).

[27] *Irving,* 162 F.3d at 165 (emphasis added).

nature of the conduct at issue, there is no occasion to consult informal rules." [28]

Congress has enabled the Department of Homeland Security to train as it sees fit.[29] Under that grant, ICE has established basic training requirements.[30] These regulations "flow rationally" from the statute and "directly address the level of conduct at issue": ICE's training practices.[31] The regulations do not define the conduct of some ICE employees, but not others, nor do they create ambiguity containing precatory and permissive language.[32] Accordingly, "there is no occasion to consult informal rules."[33]

---

[28] *Id.*

[29] *See* 5 U.S.C. § 4118(c).

[30] 5 C.F.R. § 287.1(g).

[31] *See Irving*, 162 F.3d at 165.

[32] *See id.*

[33] *See id.* Plaintiffs gripe that *Irving's* analysis makes the discretionary function exception "limitless" because Congress almost always delegates broad-based authority and there is almost always a "broad delegating regulation." Pls' Br. at 23. But this suit belies this argument. Of the three challenged practices—hiring, training, and supervising—only training is subject to the *Irving* analysis because it is governed by a broad regulation which maintains the agency's granted discretion. Hiring and supervising are not governed by *any* ICE regulations.

Plaintiffs further attempt to make the field manual mandatory by touting its authors.  They claim it is "puzzling" that aspects of the manual  issued by "the highest officers in the branch responsible for field enforcement of immigration laws" could be informal.[34]  This contention ignores the principle identified in *Irving* that "[t]o determine agency policy, courts customarily defer to the statements of the official policymaker, not others, *even though* they may occupy important agency positions."[35]

This principle applies here.  Congress delegated authority over training to the Secretary of the Department of Homeland Security (DHS).[36]  The Secretary delegated that authority to the Assistant Secretary of ICE.[37]  This delegation does not specifically mention the Assistant Secretary's authority over training.[38]  Rather, the re-delegation of training authority shows that the Assistant Secretary had

---

[34] Pls. Br. at 25.

[35] 162 F.3d at 166 (emphasis added).

[36] 5 U.S.C. § 4118(c).

[37] Doc. 47, Ex.1.

[38]  *See id.*

power "to establish and maintain effective and efficient agency-wide training programs, provide centralized oversight of the development and validation of training programs and policy, training resource allocation, and execution and management of the accreditation of training programs."[39]  In quibbling with the effective date of this re-delegation, Plaintiffs miss the broader point: at the time of the New Haven Operation, the Assistant Secretary of ICE was the official training policymaker.  The head of ICE's enforcement division does not, and did not, have authority to make training policy.  The head of ICE's enforcement division cannot render a training decision either discretionary or obligatory because Congress has granted that authority to the Secretary of DHS, which he then delegated to the Assistant Secretary.[40]

Under *Irving,* the only mandatory provisions governing ICE's training choices are regulations which, beyond establishing a basic level of training, maintain ICE's discretion in how it trains its employees.

---

[39] Doc. 47, Ex. 2 at 2.

[40]  *See Irving* 162 F.3d at 166.

13

Examination of other informal policies is unnecessary.      But if the field manual is inspected, it is emphatically not binding.  Picking a few phrases from the first page of the field manual's introduction, Plaintiffs claim that ICE regards the manual as a obligatory.[41]  Pls. Br. at 25. Plaintiffs, however, failed to include the fourth page of the introduction which concludes with the following sentence:

> Nothing in the manual shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person.[42]

The first sentence of the introduction presages this emphatic non-binding conclusion noting that the manual is the "official 'who, what, when, where, why' *guide* to the Office of Detention and Removal Operations.[43]  Courts have consistently held that agency manuals intended as non-binding guides are not mandatory.[44]  And use of

---

[41]  Pls. Br. at 25.

[42]  Ex. 3 at 4.

[43]  *Id.* at 1 (emphasis added).

[44]  *See Aragon v. United States*, 146 F.3d 819, 824 (10th Cir. 1998) ("An agency manual, in contrast to a regulation, is not necessarily entitled to the force and effect of law. This is particularly true if the agency did not intend the manual to be mandatory, but rather intended it as a guidance or advisory document.") (citation

strikingly similar language in the United States Attorneys' Manual established that its terms were non-mandatory.[45]  The field manual is explicitly a non-mandatory guide and interpreting it as legally binding ignores its very terms.

Digging even deeper in an attempt to unearth a restriction on ICE's authority to make personnel choices, Plaintiffs claim that the New Haven Operational Plan is a binding limitation on ICE's supervisory authority.[46]  Quite simply, a plan describing in detail the steps for an immigration-enforcement operation is not a "statute, regulation or policy" and therefore cannot limit a supervisor's discretion.[47]  Moreover, to render the discretionary function exception inapplicable, the statute,

---

omitted); *Hamlet v. United States*, 63 F.3d 1097,1103-05 (Fed. Cir. 1995) (holding that agency personnel manual is not binding if, among other factors, agency did not intend for it to be binding); *WildEarth Guardians v. U.S. Fish & Wildlife Serv.*, 622 F. Supp. 2d 1155, 1164 (D. Utah 2009) (holding that agency's handbook could not create mandatory directive because it was "intended as a guide" and "was not meant to have the force of law"); *Compagnie Mar. Marfret v. San Juan Bay Pilots Corp.*, 532 F. Supp. 2d 369, 381 & n.14 (D.P.R. 2008) (holding that manual was not mandatory in part because it stated that it was "intended only for the internal guidance of personnel").

[45] *See Moore v. Hartman*, Civ. A. No. 92-2288, 1993 WL 405785, at *9 n.5 (D.D.C. Sept. 24, 1993).

[46] Pls. Br. at 29.

[47] *Gaubert* 499 U.S. at 323.

15

regulation, or policy must "*specifically prescribe* a course of action for an employee to follow."[48]  Plaintiffs can point to no language in the plan itself making its terms mandatory.  Instead, they resort to e-mails and other statements describing that the plan was authorized by regional and national officials.[49]  That does not convert it into something mandatory.  None of these statements supports the inference that the plan created specific mandatory duties and eliminating the discretion of the officers supervising and executing the operation.  Furthermore, the specific course of action Plaintiffs allege was mandatory—notifying the local police department—is not subject to a specific prescription.  Rather, "[c]ase officers shall coordinate and plan with local law enforcement agencies for support *as needed.*"[50]  Thus, officers had to exercise discretion to determine if coordination and planning with local law enforcement was necessary to effect the enforcement-operation

---

[48] *Berkovitz*, 486 U.S. at 536 (1988) (emphasis added); *see also Fazi v. United States*, 935 F.2d 535, 538 (2d Cir. 1991).

[49]  Pls. Br. at 29.

[50] Ex. 4. at 3 (emphasis added).

plan.[51]

Last, Plaintiffs have failed to show any mandatory limitations on ICE's ability to hire and retain employees.  Those decisions are therefore discretionary.

### 3. Plaintiffs misconstrue the second part of the discretionary function analysis.

Plaintiffs have no answer to a parade of circuit-court cases holding that hiring, training, and supervising decisions are based on policy considerations.[52]  Failing to distinguish this case law, Plaintiffs argue

---

[51] *See, e.g.*, *Zumwalt v. United States*, 928 F.2d 951, 954 (10th Cir. 1991) (holding that because general guidelines called for "individual judgment" by employees, plaintiff's argument that conduct at issue did not involve an exercise of judgment or choice failed).

[52] *See, e.g.*, *O'Bryan v. Holy See,* 556 F.3d 361 (6th Cir. 2009) (retention and supervision of employees were based on policy considerations); *Suter v. United States,* 441 F.3d 306, 312 n.6 (4th Cir. 2006) (FBI's hiring and supervising protected by discretionary function exception); *Bolduc v. United States*, 402 F.3d 50, 62 (1st Cir. 2005) ("FBI's supervisory decisions were a matter of agency discretion and involved policy judgments of a kind that the discretionary function proviso was intended to shield"); *Nurse,* 226 F.3d at 1001-02 (supervision and training of Customs Agents involve policy judgments); *Gager v. United States,* 149 F.3d 918, 921 (9th Cir. 1998) (post office's training and supervision based on policy considerations); *Attallah*, 955 F.2d at 784 ("how, and to what extent the Customs Service supervises its employees certainly involves a degree of discretion and policy considerations of the kind that Congress sought to protect through the discretionary function exception"); *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997) (determining hiring, supervising, and training practices

that the United Stats has "failed" to articulate "clear policies" implicated in hiring, training, and supervising decisions. [53]  But multiple circuit courts have, over and over, articulated the policy considerations involved in hiring, training, and supervising decisions. That same analysis unquestionably applies to the same hiring, training, and supervising decisions made by ICE.

Attempting to escape this precedent, Plaintiffs err in applying the second part of the discretionary function test in two ways.

First, Plaintiffs contend that the United States may not "rest solely on the existence of a regulation to show that the conduct in question was grounded in policy."[54]  This directly contradicts *Gaubert*, which holds that if a regulation allows discretion, it creates a "strong presumption" that acts made under the regulation "involve consideration of the same policies which led to the promulgation of the

---

of public entity are "susceptible to policy judgment") *K.W. Thompson Tool Co. v. United States*, 836 F.2d 721, 726-27 (1st Cir. 1988) (discretionary function exception barred negligent training and supervising claims).

[53] Pls. Br. at 31.

[54] Pls. Br. at 32.

18

regulation."[55]  The training decisions ICE made therefore must be

presumed to be in furtherance of the same policy considerations ICE

considered in promulgating specific basic-training requirements.

Second, in a final dodge, Plaintiffs argue that ICE's hiring, training,

and supervising choices are not policy-based because they were

"negligent" or "encouraged violations." [56]  This, too, is based on a

fundamental misreading of the applicable case law.  As the Second

Circuit stated, when the government performs a discretionary function

"the fact that discretion is exercised in a negligent manner does not

make the discretionary function exception inapplicable."[57]  Just so:

under *Gaubert* the second part of the discretionary function test focuses

"not on the agent's subjective intent in exercising discretion conferred

by statute or regulation, but on the nature of the actions taken and

whether they are susceptible to policy analysis."[58] Under *Gaubert*, the

correct inquiry is whether hiring, training, and supervision decisions

---

[55] 499 U.S. at 324.

[56]  Pls. Br. at 33-38.

[57] *In re Agent Orange*, 818 F.2d 210, 215 (2d Cir. 1987).

[58] 499 U.S. at 325.

are susceptible to policy analysis.[59]  Whether they were negligently made does not matter.  Plaintiffs' attempt to overlay a "negligence" test to the second prong of the discretionary function test fundamentally conflicts with binding precedent.

## Conclusion

ICE's hiring, training, and supervising decisions are exactly the type of judgments Congress intended to shield from tort liability.  They are barred from judicial second-guessing by the discretionary function exception.  Accordingly, this Court should dismiss claims challenging these discretionary decisions for lack of subject-matter jurisdiction.

---

[59] *See id.*

Dated: August 27, 2010

Respectfully submitted,

TONY WEST
Assistant Attorney General

DAVID J. KLINE
Director, District Court Section

PHYLLIS PYLES
Director, Torts Branch

DAVID B. FEIN
United States Attorney

MARY M. LEACH
Assistant Director, Torts Branch

ELIZABETH J. STEVENS
Assistant Director,
District Court Section
Office of Immigration Litigation

**s/ John A. Woodcock**
JOHN A. WOODCOCK
Trial Attorney, Torts Branch,
U.S. Department of Justice,
Civil Division
PO Box 888 Ben Franklin Sta.
Washington DC 20044
TELE: (202) 626-4233
FAX: (202) 616-5200
jack.woodcock@usdoj.gov

CHRIS DEMPSEY
Senior Litigation Counsel
District Court Section
Office of Immigration Litigation

Attorneys for the United States

## CERTIFICATE OF SERVICE

I, John A. Woodcock, hereby certify that on August 27, 2010, I served a true copy of the United States' Reply in Support of United State's Renewed Motion to Dismiss upon all parties by ECF.

 s/ John A. Woodcock
JOHN A. WOODCOCK

Attorney for the United States
