# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

EDUARDO DIAZ-BERNAL, *et al.*,          :
                                        :
          Plaintiffs,                   :
                                        :          Civil No. 3:09-CV-1734 (SRU)
v.                                      :
                                        :
JULIE MYERS, *et al.*,                  :
                                        :
          Defendants.                   :
                                        :

## REPLY MEMORANDUM IN SUPPORT OF THE
## INDIVIDUAL-CAPACITY DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................... i

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 2

**I.** **This Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Constitutional Claims Because the Immigration and Nationality Act ("INA") Provides Plaintiffs a Venue to Pursue Those Claims.** ................................................................... 2

**II.** **Special Factors Counsel Against Recognizing a *Bivens* Remedy.** ................................. 7

**III.** ***Heck v. Humphrey* Precludes the Plaintiffs Who Lost Their Motion to Suppress in Removal Proceedings from Seeking a Different Result in This Action.** .................... 10

**IV.** **Plaintiffs Fail to Make a Prima Facie Showing That the Non-resident Defendants Are Subject to Personal Jurisdiction in Connecticut.** .................................................. 11

   A. The alleged conduct of the non-resident Defendants is not covered by Connecticut's long-arm statute. .................................................................................................................. 11

   B. Because the non-resident Defendants did not specifically aim any conduct at Connecticut, due process prohibits the exercise of jurisdiction**.** .................................................... 16

**V.** **Plaintiffs Fail to Allege Facts Demonstrating Personal Involvement of the Supervisory Defendants in the Alleged Constitutional Violations.** ............................. 18

   A. Plaintiffs have not alleged facts demonstrating a causal connection between the alleged "arrest quota" policy and the Fourth Amendment violations. ............................................ 19

   B. Plaintiffs allege no facts demonstrating that Supervisory Defendants were grossly negligent or deliberately indifferent to the alleged risk of constitutional violations. ....... 23

**VI.** **Plaintiffs Cannot Maintain a "Substantive Due Process" Claim Because the Fourth Amendment Fully Protects Against the Harm Alleged.** ............................................. 26

**VII.** **The Allegations Do Not Rise to the Level of a Substantive Due Process Violation.** . 28

**VIII.** **Plaintiffs Have Not Sufficiently Alleged a Procedural Due Process Violation.** ....... 30

**IX.** **Plaintiffs Fail to Allege Discriminatory Intent Sufficient to Support an Equal Protection Claim..** ............................................................................................................. 31

**CONCLUSION** ....................................................................................................... 33

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*A v. Weiss*, 121 F. Supp. 2d 718 (D. Conn 2000) ........................................................ 15

*Abner v. Sec'y of DHS*, No. 06-308, 2006 WL 1699607 (D. Conn. June 19, 2006) ................... 13

*Aguilar v. ICE*, 510 F.3d 1(1st Cir. 2007). ................................................................ 4

*Albright v. Oliver*, 510 U.S. 266 (1994) ................................................................... 27

*Ali v. Gonzales*, 502 F.3d 659 (7th Cir. 2007) ............................................................. 5

*Al-Jundi v. Rockefeller*, 885 F.2d 1060 (2d Cir. 1989) .................................................... 21

*Amnesty Am. v. Town of West Hartford*, 361 F.3d 113 (2d Cir. 2004) ................................... 24, 26

*Arar v. Aschcroft*, 532 F.3d 157 (2008) ................................................................ 8, 15

*Arar v. Ashcroft*, 585 F.3d 559 (2d Cir. 2009) ............................................................. 8

*Arias v. ICE*, No. 07-01959, 2009 WL 2171037 (D. Minn. July 17, 2009) ................................ 23

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ................................................... 20, 21, 31, 33

*Avramenkov v. INS*, 99 F. Supp. 2d 210 (D. Conn. 2000) ............................................... 4, 6

*Barbera v. Smith*, 654 F. Supp. 386 (S.D.N.Y. 1987) ...................................................... 14

*Barrett v. United States*, 646 F. Supp. 1345 (S.D.N.Y. 1986) .............................................. 14

*Beatty v. Davidson*, No. 06-5715, 2010 WL 1407311 (W.D.N.Y. Mar. 31, 2010) ...................... 24

*Bell v. Burson*, 402 U.S. 535 (1971) ...................................................................... 29

*Bennett v. Passic*, 545 F.2d 1260 (10th Cir. 1976) ........................................................ 31

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007) ............................................. 11

*Bezman v. Ashcroft*, 245 F. Supp. 2d 446 (D. Conn. 2003) ................................................. 7

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ..................................................... 17

*CDI Info. Serv. Inc. v. Reno*, 278 F.3d 616 (6th Cir. 2002) ............................................... 4

*Chaiken v. VV Publishing Corp.*, 119 F.3d 1018 (2d Cir. 1997)................................................. 18

*Chavez v. Martinez*, 538 U.S. 760 (2003)......................................................................... 31

*City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320 (1958)..................................................... 2

*Claasen v. Brown*, No. 94-1018, 1996 WL 79490 (D.D.C. Feb. 16, 1996) ................................... 17

*Clark v. Dowty*, No. 05-1345, 2007 WL 2022045 (D. Conn. July 9, 2005)................................. 31

*Coan v. Bell Atlantic Sys. Leasing Int'l, Inc.*, 813 F. Supp. 929 (D. Conn. 1990) ...................... 13

*Collins v. City of Harker Heights*, 503 U.S. 115 (1992)........................................................ 29

*Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42 (2d Cir. 1991) ........................................ 32

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998).................................................... 28

*Covington v. New York*, 171 F.3d 117 (2d Cir. 1999) ............................................................ 9

*Custom Navigation Sys., Inc. v. Pincus*, 935 F. Supp. 117 (D. Conn. 1995 ................................. 13

*Danzer v. Norden Systems, Inc.*, 151 F.3 50 (2d Cir. 1998) ...................................................... 33

*Daud v. Gonzales*, 207 Fed. App'x 194 (3d Cir. 2006)........................................................... 5

*Davidson v. New Orleans*, 96 U.S. 97 (1878)................................................................ 29

*De Canas v. Bica*, 424 U.S. 351 (1976)...................................................................... 9

*Doe v. Barrett*, No. 3:01-cv-519, 2006 WL 3741825 (D. Conn. Dec. 19, 2006) ........................ 22

*Dotson v. Griesa*, 398 F.3d 156 (2d Cir. 2005) ............................................................... 9

*El-Badrawi v. DHS*, 579 F. Supp. 2d 249 (D. Conn. 2008)................................................ 1, 3, 7

*Elgharib v. Napolitano*, 600 F.3d 597 (6th Cir. 2010) ........................................................ 6

*Estes-El v. Long Island Jewish Ctr.*, 916 F. Supp. 268 (S.D.N.Y. 1995) ................................... 9

*Feit v. Ward*, 886 F.2d 848 (7th Cir. 1989) ................................................................. 8

*Gonzalez v. Reno*, 325 F.3d 1228 (11th Cir. 2003)........................................................ 21

*Graham v. Connor*, 490 U.S. 386, (1989) ............................................................... 27, 30

*Green v. McCall*, 710 F.2d 29 (2d Cir. 1983) ........................................................... 13, 14

*Grove Press v. Angleton*, 649 F.2d 121 (2d Cir. 1981) ................................................ 14

*Hadayat v. Gonzales*, 458 F.3d 659 (7th Cir. 2006) ..................................................... 5

*Hatami v. Chertoff*, 467 F. Supp. 2d 637 (E.D. Va. 2006) ........................................... 7

*Hill v. Pugh*, 75 Fed App'x 715 (10th Cir 2003) ......................................................... 17

*Hudson v. Palmer*, 468 U.S. 517 (1984) ...................................................................... 29

*Ibrahim v. DHS*, 538 F.3d 1250, 1253 (9th Cir. 2008). ............................................... 18

*IIT v. Cornfeld*, 619 F.2d 909 (2d Cir. 1980) .............................................................. 11

*In re Amilcar Soto Velasques*, No. A088-190-229 (BIA Sept. 22, 2010) ...................... 1

*Ingraham v. Wright*, 430 U.S. 651 (1977) ................................................................... 29

*Juarez v. Holder*, 599 F.3d 560 (7th Cir. 2010) ........................................................... 5

*Kaufmann v. United States*, 840 F. Supp. 641 (E.D. Wis. 1993) .................................. 15

*Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40 (N.Y. 1988) ...................................... 14

*Lanman v. Hinson*, 529 F.3d 673 (6th Cir. 2008) ......................................................... 19

*Leather v. Eyck*, 180 F.3d 420 (2d Cir. 1999) .............................................................. 10

*Leer v. Murphy*, 844 F.2d 628 (9th Cir.1988) .............................................................. 19

*Lombardi v. Whitman*, 485 F.3d 73 (2d Cir. 2007) .................................................. 28, 29

*Lopez-Rodriguez v. Mukasey*, 536 F.3d 1012 (9th Cir. 2008) ................................. 10, 11

*Lucidrisk, LLC v. Ogden*, 615 F. Supp. 2d 1 (D. Conn. 2009) ................................. 12, 13

*Mahmud v. Oberman*, 508 F. Supp. 2d 1294 (N.D. Ga. 2007) .................................... 17

*Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*,
   264 F.3d 32 (2d Cir. 2001) ....................................................................................... 14

*Mateo v. Fischer*, No. 08 Civ. 7779, 2010 WL 431229 (S.D.N.Y. Feb. 8. 2010) ........ 25

*McDonald v. Haskins*, 966 F.2d 292 (7th Cir. 1992) .................................................... 30

*Mejia v. DHS,* 562 F.3d 1137 (11th cir. 2009). ................................................................... 6

*Merritt v. Shuttle*, 245 F.3d 182 (2d Cir. 2001) ........................................................... 2, 3

*Navia-Duran v. INS*, 568 F.2d 803 (1st Cir. 1977) ...................................................... 30

*Nken v. Holder*, 129 S.Ct. 1749 (2009) .............................................................................. 5

*Nwanze v. Philip Morris Inc.*, 100 F. Supp. 2d 215 (S.D.N.Y. 2000) .................................... 13, 14

*O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222 (S.D.N.Y. 1989) ............................ 11

*O'Connor v. Pierson*, 426 F.3d 187 (2d Cir. 2005). ......................................................... 29

*Okin v. Village of Cornwall-On-Hudson Police Dept.*, 577 F.3d 415 (2d Cir. 2009) ................. 29

*Patterson Collection v. Sullivan,*
  No. 3:07-cv-0592, 2010 WL 1883424 (D. Conn. May 7, 2010) ............................................. 28

*Pena v. Deprisco*, 432 F.3d 98 (2d Cir. 2005) ................................................................. 29

*Petrucelli v. Hasty*, No. 05-cv-2002, 2010 WL 455002  (E.D.N.Y. Feb. 2, 2010) ..................... 25

*Pinto-Montoya v. Mukasey*, 540 F.3d 126 (2d Cir. 2009) ........................................... 8, 10, 11

*Poe v. Leonard*, 282 F.3d 123 (2d Cir. 2002) ............................................................ 19, 24

*Rank v. Hamm*, No. 2:04-997, 2007 WL 894565 (S.D.W.Va. 2007) ......................................... 18

*Rich v. United States*, 158 F. Supp. 2d 619 (D. Md. 2001) ............................................... 27

*Robinson v. Clemons*, 987 F. Supp. 280 (D. Del. 1998) ..................................................... 31

*Robinson v. Military Overseas Sales Corp.*, 827 F. Supp. 915 (E.D.N.Y. 1993) ........................ 15

*Rochin v. California*, 342 U.S. 165 (1952) ..................................................................... 29

*Rodriguez v. DHS*, 592 F.3d 612 (4th Cir. 2010) .............................................................. 6

*Rosenblit v. Danaher*, 537 A.2d 145 (Conn. 1988) ........................................................... 13

*Royalty Network Inc. v. Dishant.Com LLC*, 638 F. Supp. 2d 410 (S.D.N.Y. 2009) ..................... 11

*Sealey v. Giltner*, 116 F.3d 47 (2d Cir. 1997) ............................................................... 25

*See Bryant v. City of New York*, 404 F.3d 128 (2d Cir. 2005) ............................................. 27

*Sissoko v. Rocha*, 509 F.3d 947(9th Cir. 2007) ............................................................. 7

*St. Cyr v. INS,* 533 U.S. 289(2001) ............................................................................. 4, 5

*TRW Inc. v. Andrews*, 534 U.S. 19 (2001) ....................................................................... 4

*United States v. Lanier*, 520 U.S. 259 (1997) ............................................................... 27

*Van Dinh v. Reno*, 197 F.3d 427 (10th Cir. 1999) .......................................................... 7

*Vann v. City of New York*, 72 F.3d 1040 (2d Cir. 1995) ............................................... 22

*Vertrue Inc.v. Meshkin*, 429 F. Supp. 2d 479 (D. Conn. 2006) ....................... 12, 14, 15

*White-Ruiz v. City of New York*, No. 93-civ-7233 (S.D.N.Y. Oct. 22, 1996) .............. 23

*Wilkie v. Robbins*, 551 U.S. 537 (2007) ................................................................. 5, 8, 9

*Wong v. United States*, 373 F.3d 852 (9th Cir. 2004) ..................................................... 7

*Wright v. Ernst & Young LLP*, 152 F.3d 169 (2d Cir. 1998) .................................... 1, 11

*Zadyvdas v. Davis*, 533 U.S. 678 (2001) ....................................................................... 7

## **Statutes**

8 U.S.C. § 1105a(6) (1995) ............................................................................................. 5

8 U.S.C. § 1226 ............................................................................................................... 6

8 U.S.C. § 1252 ..................................................................................................... passim

Conn. Gen. Stat. § 52-59b(a) .......................................................................... 12, 13, 15, 16

## **Rules**

Fed. R. Civ. P. 8(a)(2 .................................................................................................... 20

## INTRODUCTION

Plaintiffs' Opposition to the individual-capacity Defendants' motion to dismiss violates a cardinal rule of pre-discovery briefing: it makes factual assertions not contained in the complaint. Second Circuit case law strictly forbids Plaintiffs from using this tactic to avoid dismissal. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998). Plaintiffs' arguments concerning personal jurisdiction and supervisory liability are rife with unalleged factual assertions. *See* Opp'n at 40 n.32, 43 n.39, 63-64, 68, 71-72. Even Plaintiffs' special factors argument is clouded by their effort to rewrite their complaint. *See* Opp'n at 33 n.25. The Court may not consider these improper assertions in deciding the motion to dismiss.

In addition to making improper factual assertions, Plaintiffs gloss over a distinguishing fact that is central to the subject matter jurisdiction and special factors arguments the Defendants have raised: Plaintiffs had the opportunity to raise identical constitutional claims in removal proceedings and obtain relief in those proceedings. This fact limits the applicability of cases like *El-Badrawi v. DHS*, 579 F. Supp. 2d 249 (D. Conn. 2008)) and *Argueta v. ICE*, No. 08-1652, 2009 WL 1307236 (D.N.J. May 7, 2009), on which Plaintiffs rely extensively. Moreover, the relationship between this action and the ongoing removal proceedings is a critical question that Plaintiffs treat only lightly. The interrelationship between this action and the removal proceedings is illustrated by the fact that the Board of Immigration Appeals ("BIA") recently remanded the case against one Plaintiff to the immigration court for reconsideration of factual issues concerning consent to enter a residence, an issue at the core of Plaintiffs' constitutional claims in this action. *See In re Amilcar Soto Velasques*, No. A088-190-229, at 4-7 (BIA Sept. 22, 2010)) (attached at Exhibit A).

Finally, while Plaintiffs attempt to paint a picture of all Defendants being actively involved in the alleged conduct, the complaint does not support that contention. This is highlighted by the fact that Plaintiffs have conceded that their Fourth Amendment and Equal Protection claims against Defendants Riccardi and Vasquez should be dismissed, and their concession that their Tenth Amendment claim against Defendants Sullivan, McCaffrey, Vetrano-Antuna and Wilkowski should be dismissed. Opp'n at 3 n.2 & 49 n.46. As explained below, a close reading of Plaintiffs' complaint reveals that Plaintiffs have failed to plead facts sufficient to withstand Defendants' motion to dismiss.

## ARGUMENT

I.  **This Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Constitutional Claims Because the Immigration and Nationality Act ("INA") Provides Plaintiffs a Venue to Pursue Those Claims.**

1.  **INA Section 1252(b)(9).** As Defendants explained in their opening brief at 24-27, an exclusive review provision such as 8 U.S.C. § 1252(b)(9) precludes district courts "from deciding issues that 'could and should have been' raised in an administrative proceeding." *Merritt v. Shuttle*, 245 F.3d 182, 192 (2d Cir. 2001) (citing *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 339 (1958). Under this standard, the Court lacks subject matter jurisdiction over Plaintiffs' constitutional claims because those claims all raise "issues" that could have been raised in Plaintiffs' removal proceedings. Plaintiffs make no effort to distinguish *Merritt*. Rather, they argue that they cannot seek damages in removal proceedings, and therefore *Merritt* does not preclude review of their *Bivens* claims. But the decision in *Merritt* did not turn on whether the administrative proceeding permitted a damages remedy. If it had, then *Merritt* would have been decided on the simple fact that the plaintiff sought damages under the Federal Tort Claims Act ("FTCA"). The determining factor in *Merritt* was not the remedy sought, but whether the "issue" could have been presented in the administrative proceeding. *See Merritt*, 245

F.3d at 192 & n.14 (the issue "raised by [plaintiff's] FTCA claim in the district court" could not have been raised in the administrative proceeding).

This Court applied the same reasoning in *El-Badrawi v. DHS* when it held that the plaintiff's FTCA claim for the period he was detained after his bond hearing and prior to voluntary departure was "not cognizable in this court." 579 F. Supp. 2d 249, 272 (D. Conn. 2008). The unavailability of a damages remedy in the administrative process was not determinative; if it had been, the Court would have reached a different result. Rather, the determining factor was that the administrative process provided a mechanism (obtaining a bond) to address the harm of detention. *Id.* This Court held that the remainder of the plaintiff's FTCA claim fell outside § 1252(b)(9), not because the plaintiff was seeking damages (which are unavailable in removal proceedings) but because the remainder of the claim concerned harms that could not be remedied in removal proceedings. *Id.* As explained in Defendants' opening brief, every Plaintiff could have raised the same constitutional issues they are pressing here in their removal proceedings. All but one of them did so and five Plaintiffs had their removal proceedings terminated.[1] Under *Merritt* and *El-Badrawi*, § 1252(b)(9) precludes jurisdiction over the constitutional issues raised in Plaintiffs' *Bivens* claims.[2]

Plaintiffs erroneously contend that the text of § 1252(b)(9) encompasses only challenges to "final orders of removal." Opp'n at 10-13. The First Circuit rejected this precise argument in *Aguilar v. ICE*, observing that the argument "belies the statute's plain meaning." 510 F.3d 1, 9-

---

[1] A sixth Plaintiff may yet obtain this result, as the BIA recently remanded the case against Plaintiff Velasquez for reconsideration. *See* Ex. A.

[2] Plaintiffs' reading of certain passages from *El-Badrawi* at pages 16-17 of their Opposition is not incorrect, it just misses the point. That the Court properly held the plaintiff could seek damages for harms he never "had a chance to [raise] in the administrative process," 579 F. Supp. at 272, does not undermine Defendants' argument—it bolsters the argument, as the Plaintiffs in this action had an opportunity to raises the issues "in the administrative process."

10 (1st Cir. 2007). The court thoroughly examined the provision's text and history, and held that the reach of § 1252(b)(9) was not "limited to challenges to singular orders of removal or to removal proceedings simpliciter." *Id.* at 9 ("By its terms, the provision aims to consolidate '*all* questions of law and fact' that 'arise from' either an 'action [taken]' or a 'proceeding' brought in connection with the removal of an alien." The court also rejected the argument that all actions which occur prior to the institution of removal proceedings are not encompassed by the provision, as such a reading would render the word "action" superfluous. *Id.* at 10. The court explained that the phrase "arising from" determines the scope of § 1252(b)(9), and it reached a holding quite similar to the Second Circuit's holding in *Merritt*: claims raising issues that could have been raised in removal proceedings fall within the section. *Id.* at 10-11. While claims raising issues "wholly collateral to the removal process" do not fall under § 1252(b)(9), "legal and factual issues related to" whether a particular alien should be removed "can be raised in removal proceedings" and therefore "aris[e] from any action taken or proceeding brought to remove an alien." *Id.*; 8 U.S.C. § 1252(b)(9).[3]

Plaintiffs also rely on *St. Cyr v. INS* to support their argument, but *St. Cyr* is inapposite as its holding rests on the unique nature and importance of habeas, a right codified in statute and enshrined in the Constitution. 533 U.S. 289, 299-300 (2001). A *Bivens* remedy stands on more

---

[3] This Court and others have squarely rejected Plaintiffs' argument that the title of § 1252 limits the entire section to only final review of removal orders. Section 1252 "addresses a multitude of jurisdictional issues, including ones that are collateral to the review of final orders of deportation," therefore "§ 1252 is not limited in application to only final orders of removal." *Avramenkov v. INS*, 99 F. Supp. 2d 210, 214 (D. Conn. 2000); *see also CDI Info. Serv. Inc. v. Reno*, 278 F.3d 616, 619-20 (6th Cir. 2002) ("Given the scope of section 1252 we conclude that its title does no more than indicate the provisions in a general manner.") Additionally, Plaintiffs' argument that the title cabins sub-section (b)(9) to claims challenging a removal order would make the words "action taken" superfluous, and thus violate the "cardinal principle of statutory construction" that a statute should be construed so that "no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001).

precarious legal footing, as it is judicially created and "not an automatic entitlement." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). Moreover, the Supreme Court stated in *St. Cyr* that "it might be permissible to accept" the lack of habeas jurisdiction if "the question of law could be answered in another judicial forum." 533 U.S. at 314. That is the situation here, where Plaintiffs' removal proceedings provided them a forum in which to pursue their constitutional claims.[4]

    **2.  INA Section 1252(g).** Defendants discussed several cases in their opening brief at pages 29-31 which hold that § 1252(g) bars constitutional challenges to selective enforcement of immigration laws and enforcement programs directed at a particular group of aliens. Plaintiffs try to overcome that precedent by arguing that Section 1252(g) only bars claims challenging conduct that occurs after the issuance of a Notice to Appear ("NTA") and the institution of removal proceedings. Opp'n at 19-21. If that were correct, the cases cited by Defendants would not have held that § 1252(g) barred the claims at issue. Instead, each case concerned conduct that occurred prior to the initiation of removal proceedings, yet in no case did the applicability of § 1252(g) turn on whether an NTA had been issued or removal proceedings had begun. It was sufficient that the goal of the pre-removal activity was to identify aliens who could be placed in removal proceedings. *See Ali v. Gonzales*, 502 F.3d 659, 665 (7th Cir. 2007) (§ 1252(g) barred claim that program targeted alien for removal based on his "religion and ethnicity"), *abrogated in part on other grounds as recognized in Juarez v. Holder*, 599 F.3d 560 (7th Cir. 2010); *Hadayat v. Gonzales*, 458 F.3d 659, 665 (7th Cir. 2006) (same); *Daud v. Gonzales*, 207 Fed. App'x 194, 201 (3d Cir. 2006) (although alien "came to the INS's attention only as a result" of a program that "impermissibly discriminates on the basis of national origin,"

---

[4] Plaintiffs' reliance on the precursor to § 1252(b)(9) is irrelevant because that provision contained wholly different language. *See* 8 U.S.C. § 1105a(6) (1995). Congress repealed the old statute and replaced it with a new one in 1996. *See Nken v. Holder*, 129 S.Ct. 1749, 1755 (2009).

§ 1252(g) barred challenge to the program). A goal of the National Fugitive Operations Program

("NFOP"), like the program in these cases, is to identify aliens who can be placed in removal

proceedings. Because Plaintiffs were arrested as part of the NFOP, § 1252(g) bars their claims.

    **3.  INA Section 1252(a)(2)(B)(ii).** Plaintiffs do not contest that 8 U.S.C. § 1226 grants

the Secretary discretion to arrest and detain aliens pending a decision on whether the alien is

removable, and that the administration and implementation of the NFOP falls within that

statutory grant of discretion. *See* Defs' Mem. at 32-34. To avoid the jurisdictional hurdle that §

1252(a)(2)(B)(ii) presents to their NFOP-based claims against Myers, Torres, Chadbourne,

Martin and Sullivan, Plaintiffs make two statutory text arguments, which are both untenable.

Plaintiffs' first argument, that the provision is limited to removal proceedings, Opp'n at 23-24, is

belied by the provision's plain text, which states the provision applies "regardless of whether the

[challenged] judgment, decision, or action is made in removal proceedings." 8 U.S.C. §

1252(a)(2)(B); *see also Rodriguez v. DHS*, 592 F.3d 612, 619 (4th Cir. 2010) (the text "makes

clear that the jurisdictional limitations imposed by § 1252(a)(2)(B) also apply to review of

agency decisions made outside the removal context").[5] Plaintiffs' second argument, that because

they allege constitutional violations the provision cannot serve as a bar, Opp'n at 23, also

founders on the provision's plain text, which states that the provision applies "Notwithstanding

any other provision of law (statutory or nonstatutory)." As Defendants explained in their opening

brief, more than one court has held that this text is expansive enough to cover constitutional

claims. *See Elgharib v. Napolitano*, 600 F.3d 597, 602-605 (6th Cir. 2010); *Hatami v. Chertoff*,

---

[5] The operative language was added to the statute in 2005. *See Mejia v. DHS,* 562 F.3d 1137,
1142 n.13 (11th cir. 2009). The lone case Plaintiffs cite in their opposition was decided prior to
the 2005 revision. But even prior to the revision, this Court had held that § 1252(a)(2)(B)(ii) was
not limited to final orders of removal. *See Avramenkov*, 99 F. Supp. 2d at 214..

467 F. Supp. 2d 637, 640-41 (E.D. Va. 2006).[6] Likewise, the Ninth Circuit has held that if the text of an INA jurisdiction stripping provision is satisfied, a *Bivens* claim should not be allowed. *See Sissoko v. Rocha*, 509 F.3d 947, 949-50 (9th Cir. 2007) (analyzing § 1252(g) Plaintiffs contend that *El-Badrawi* supports their position, but the claims at issue in *El-Badrawi* were against ICE agents who actually investigated and arrested the plaintiff, not senior officials who made no decisions concerning whether to arrest particular Plaintiffs. *See El-Badrawi*, 579 F. Supp. 2d at 253. The Plaintiffs' NFOP-based claims against the senior ICE officials are materially different from the claims at issue in *El-Badrawi*. Those claims, like the claims in this case against ICE agents who actually made the arrests, are not barred by § 1252(a)(2)(B)(ii).[7] It is the claims challenging discretionary decisions by senior ICE personnel that are barred.

## II.   Special Factors Counsel Against Recognizing a *Bivens* Remedy.

In arguing that no special factors exist in this case, Plaintiffs gloss over a key fact that distinguishes this case from *El-Badrawi* and the other cases they erroneously contend are "similar to the instant case," Opp'n at 27: Plaintiffs' removal proceedings provided each of them a venue where they could seek to "vindicate [their] protected interest[s]." *Wilkie*, 551 U.S. at

---

[6] Plaintiffs' contention that *Hatami* is limited to bond issues is erroneous, as the court made plain that that § 1252 (a)(2)(B)(ii) covers "*any discretionary* decision" that the INA expressly grants to the Secretary of Homeland Security. *Hatami*, 467 F. Supp. 2d at 640. A bond decision just happened to be at issue in *Hatami*. *Cf. Van Dinh v. Reno*, 197 F.3d 427, 433-34 (10th Cir. 1999) (prior version of § (a)(2)(b)(ii) barred *Bivens* challenge to transfer of alien).

[7] Plaintiffs also rely on *Wong v. United States*, Opp'n at 23, but like *El-Badrawi*, *Wong* involved claims against officials who made specific parole and detention decisions about the plaintiff. *See* 373 F.3d 852, 958-59 (9th Cir. 2004). Moreover, the constitutional claims at issue in *Wong* raised "purely legal, nondiscretionary challenges to the decisions in question." *Id.* at 963. Plaintiffs' claims are distinct, as they challenge discretionary conduct pertaining to supervision and training. Likewise, the habeas cases Plaintiffs rely on are inapposite because they concerned challenges to a statutory or regulatory provision, not discretionary conduct. *See Zadvydas v. Davis*, 533 U.S. 678, 682 (2001); *Bezman v. Ashcroft*, 245 F. Supp. 2d 446, 448 (D. Conn. 2003).

550. Plaintiffs mention this issue in passing, when they assert that termination of their removal proceedings is a remedy inferior to money damages. Opp'n at 30. But Plaintiffs' attempt to downplay the significant benefit of termination, which five of them have already obtained, cannot change the fact that termination of removal proceedings is a remedy that addresses the precise harm Plaintiffs have alleged. The INA's scheme expressly provides for review of constitutional issues, *see* 8 U.S.C. §§ 1252(a)(2)(D); 1252(b)(9);  *Pinto-Montoya v. Mukasey*, 540 F.3d 126 (2d Cir. 2009), and that scheme was available to all Plaintiffs to press the same constitutional issues they are pursuing here. The Second Circuit panel that decided *Arar v. Aschcroft* adopted this view in holding that the INA's review procedures "provide 'a convincing reason'" to not recognize *Bivens* claims alleging that officials removed Arar to Syria knowing he would be tortured there. 532 F.3d 157, 180 (2d Cir. 2008), *vacated and superceded en banc*, 585 F.3d 559 (2d Cir. 2009) (quoting *Wilkie*, 551 U.S. at 550).[8]

        In addition to glossing over the distinguishing feature of this case, Plaintiffs wrongly assert that a statutory scheme must provide an "adequate" remedy to qualify as a special factor. Opp'n at 28-30. The Supreme Court, this circuit and numerous other circuits have rejected such a "foray into the meaningfulness" of the remedies provided, because the sole inquiry is "the comprehensive nature of the" scheme. *Feit v. Ward*, 886 F.2d 848, 854 (7th Cir. 1989) (collecting cases); *accord United States v. Stanley*, 483 U.S. 669, 683 (1987) ("it is irrelevant to a 'special factors' analysis whether the laws currently on the books afford an 'adequate' federal remedy for his injuries"); *Dotson v. Griesa*, 398 F.3d 156, 166-67 (2d Cir. 2005) ("[I]t is the

---

[8] The Second Circuit's en banc ruling in *Arar* did not address the panel's holding that the INA review scheme constituted a special factor. *See Arar v. Ashcroft*, 585 F.3d 559, 573 n.6 (2009). Judge Chatigny observed during the hearing in *Barrera v. Boughton*, cited by Plaintiffs, that "the panel opinion can be fairly read to support the defendants' position" in that case. Dkt. 94-2 at 94.

overall comprehensiveness of the statutory scheme at issue, not the adequacy of the particular remedies afforded, that counsels judicial caution in implying *Bivens* actions.") Unquestionably, the INA is "the comprehensive federal statutory scheme for regulation of immigration and naturalization," *De Canas v. Bica*, 424 U.S. 351, 353 (1976), and Congress' repeated revisions to the immigration statutes shows that the omission of a damages remedy was not inadvertent.[9]

Defendants also explained that recognizing a *Bivens* remedy could interpose the Court in ongoing removal proceedings, contrary to the carefully crafted INA scheme that channels review of all constitutional issues to the courts of appeal. Defs.' Mem. at 40-42. Plaintiffs dismiss this concern as "overblown rhetoric," Opp'n at 35, but they never really explain how proceeding in this venue will not intrude upon the removal proceedings. For example, if this Court issues a substantive ruling prior to the Second Circuit ruling on any petitions the Plaintiffs file, how does this Court's ruling affect those petitions? May Plaintiffs use rulings in this action and facts learned in discovery in their removal proceedings? Also, are factual and credibility determinations made by the immigration judge binding on this Court?[10] Less than a month ago, the BIA remanded a removal action involving one of the Plaintiffs for reconsideration on the issue of consent to enter a residence. *See* Ex. A. The clear implication of the ruling is that entry

---

[9] Plaintiffs' assertions related to "officer accountability," Opp'n at 33, are also irrelevant. This is plain from *Wilkie*, where special factors precluded recognizing a *Bivens* remedy despite "impermissible conduct" by government officials. 551 U.S. at 562. Plaintiffs have not cited a single case that considered officer accountability in the special factors context. Indeed, such an approach would in effect nullify the special factors doctrine. Defendants also object to the new factual assertions in footnote 25 that purport to show misconduct by persons other than the Defendants. These assertions may not be considered by the Court. *See supra* at 1.

[10] Plaintiffs' assertion in footnote 26 that constitutional claims relating to pending criminal matters may proceed despite interference with a criminal case is wrong. *See Estes-El v. Long Island Jewish Ctr.*, 916 F. Supp. 268, 269-70 (S.D.N.Y. 1995); *cf. Covington v. New York*, 171 F.3d 117, 124 (2d Cir. 1999) (civil rights claim challenging conduct that forms the basis of a criminal prosecution does not accrue until termination of the criminal proceeding).

without consent would constitute an "egregious" Fourth Amendment violation sufficient to

terminate removal proceedings. Thus, Plaintiffs are wrong when they assert that there are

"different legal standards and analysis" between their constitutional claims here and their claims

in the removal proceedings. Opp'n at 35; *see also Pinto-Montoya*, 540 F.3d at 131 (seizure based

on race an egregious violation); *Lopez-Rodriguez v. Mukasey*, 536 F.3d 1012, 1015 (9th Cir.

2008) (non-consensual entry an egregious violation). In the end, wading into the constitutional

issues currently being litigated in Plaintiffs' removal proceedings would be contrary to

Congressional intent. The damages remedy Plaintiffs' seek should not be recognized.

### III.    *Heck v. Humphrey* Precludes the Plaintiffs Who Lost Their Motion to Suppress in Removal Proceedings from Seeking a Different Result in This Action.

Plaintiffs' lone argument against a *Heck* bar to the claims brought by the Plaintiffs who

lost their motion to suppress is that those Plaintiffs' did not have the opportunity to pursue

habeas petitions, citing *Leather v. Eyck*, 180 F.3d 420 (2d Cir. 1999). Plaintiffs misunderstand

*Heck* and misread *Leather*. The *Heck* bar applies if a plaintiff cannot show "that the conviction

or sentence has been reversed on *direct appeal*" or expunged, declared invalid or called into

question by the issuance of a writ of habeas corpus. *Heck v. Humphrey*, 512 U.S. 477, 486-87

(1994) (emphasis added). In *Leather*, a habeas petition just happened to be the only vehicle the

plaintiff could use to seek reversal of his DUI conviction, but that vehicle was foreclosed

because he was never incarcerated. *Leather*, 180 F.3d at 422, 424. Unlike the plaintiff in *Leather,*

Plaintiffs here have a vehicle available to them to challenge the immigration court's rulings—

direct appeals to the BIA and the Second Circuit. Indeed, every Plaintiff has taken advantage of

this vehicle. *See* Exs. R-V to Defs.' Mem. Moreover, if the claims Plaintiffs are pressing here

constitute egregious violations under immigration law, the analysis in this Court, the BIA and the

Second Circuit will be the same. *See Pinto-Montoya*, 540 F.3d at 131; *Lopez-Rodriguez*, 536

F.3d at 1015. The constitutional claims pressed by the five Plaintiffs who lost their motions to suppress in removal proceedings, which are now on appeal, fall squarely under the *Heck* bar.

**IV.     Plaintiffs Fail to Make a Prima Facie Showing That the Non-resident Defendants Are Subject to Personal Jurisdiction in Connecticut.**

In response to the personal jurisdiction challenge by senior, non-resident ICE officials Myers, Torres, Chadbourne and Martin, Plaintiffs have improperly asserted new allegations in their Opposition. Plaintiffs may not use this tactic to avoid dismissal. *See Wright*, 152 F.3d at 178 (a party may not "amend its complaint through statements made in motion papers" (citing *IIT v. Cornfeld*, 619 F.2d 909, 914 n.6 (2d Cir. 1980); *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) ("[I]t is axiomatic" that a complaint "cannot be amended by the briefs in opposition to a motion to dismiss."). This Court may not consider the assertions in the Opposition concerning purported contacts with Connecticut by Torres, Chadbourne and Martin, assertions that Plaintiffs rely on repeatedly. *See* Opp'n at 63-64, 68, 71-72.

On the facts actually alleged, Plaintiffs have failed to make a prima facie showing that the non-resident Defendants are subject to personal jurisdiction. Because they have not made a prima facie showing, Plaintiffs are not entitled to discovery. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 255 (2d Cir. 2007) (affirming denial of discovery where "the plaintiff had not made out a prima facie case for jurisdiction"); *Royalty Network Inc. v. Dishant.Com LLC*, 638 F. Supp. 2d 410, 425 (S.D.N.Y. 2009) ("threshold showing" required to entitle plaintiff to discovery).

**A.   The alleged conduct of the non-resident Defendants is not covered by Connecticut's long-arm statute.**

Plaintiffs contend that four provisions of Connecticut's long-arm statute cover the few out-of-state actions allegedly taken by the Defendants that relate to the June 6, 2007 operation. *See* Opp'n at 62-69. Plaintiffs' unrestrained reading of the statute is not supported by case law.

**1. Section 52-59b(a)(1).** Plaintiffs have not shown that the non-resident Defendants "transacted business" in Connecticut. A person transacts business when he has "invoked the benefits and protection of Connecticut's laws by virtue of his or her purposeful Connecticut related activity." *Lucidrisk, LLC v. Ogden*, 615 F. Supp. 2d 1, 5 (D. Conn. 2009) (internal quotes and citation omitted). The nature and quality of the contacts matters, and the "inquiry focuses on whether the defendant engaged in some purposeful activity" in the forum that has a "connection with the matter in suit." *Vertrue Inc.v. Meshkin*, 429 F. Supp. 2d 479, 489-90 (D. Conn. 2006) (internal quotes and citations omitted). The Third Amended Complaint ("TAC") alleges only two purposeful acts by any non-resident Defendant related to the June 6, 2007 operation and expressly aimed at Connecticut: actions by Torres and Chadbourne to "convey" their approval of the Operational Plan to an ICE official (Defendant McCaffrey) in Connecticut. TAC ¶ 243. All other allegations that purport to draw a direct connection between the non-resident Defendants and the operation allege nothing more than receipt and knowledge of the operation plan. *See id.* ¶ 315-16 (Myers may have received a note on June 5, 2007, advising her of the June 6 operation); *id.* ¶¶ 240-42, 311 (Torres and Chadbourne received and reviewed the plan); *id.* ¶ 239, 315 (Martin received the plan and received the note that may have been reviewed by Myers).[11]

For Myers and Martin, it is plain that their passive receipt and purported knowledge of the operation plan does not constitute purposeful activity in Connecticut that invoked the benefit and protection of Connecticut's laws. *Cf. Ryan*, 918 A.2d at 874-75 (non-resident who prepared

---

[11] Plaintiffs assert that Martin approved the plan, Opp'n. p. 64, but there is no such allegation in the complaint. *See* TAC ¶¶ 239, 241-42. The assertions that Chadbourne and Martin traveled to Connecticut may not be considered, but even so the purported visits do not establish jurisdiction because Plaintiffs do not assert that the visits related to the June 6 operation. The in-state activity must relate to the cause of action to satisfy the long-arm statute. *See* Conn. Gen. Stat. § 52-59b(a)); *Ryan v. Cerullo*, 918 A.2d 867, 876 (Conn. 2007).

Connecticut tax return and derived "minimal income from Connecticut residents" did not transact business in Connecticut). The same is true for Chadbourne and Torres and their act of "conveying" approval of the plan to McCaffrey. Numerous cases hold that merely sending communications into the state, without more, does not constitute transacting business. *See, e.g., Lucidrisk, LLC*, 615 F. Supp. 2d at 5 ("communications between an out-of-state defendant and a plaintiff within the jurisdiction does not, by itself, constitute the transacting of business"); *Custom Navigation Sys., Inc. v. Pincus*, 935 F. Supp. 117, 119 (D. Conn. 1995); *Coan v. Bell Atlantic Sys. Leasing Int'l, Inc.*, 813 F. Supp. 929, 946 (D. Conn. 1990). Even attending a meeting in Connecticut to discuss matters related to out-of-state conduct that forms the basis of a claim does not qualify as transacting business. *See Rosenblit v. Danaher*, 537 A.2d 145, 151-53 (Conn. 1988). Plaintiffs' effort to invoke jurisdiction under § 52-59b(a)(1) fails.[12]

**2. Section 52-59b(a)(2).** Defendants explained in their opening brief at pages 13-16 why *Green v. McCall* precludes jurisdiction under § 52-59b(a)(2). Plaintiffs' argument that *Green* is no longer good law is meritless. Plaintiffs rely on cases concerning the fiduciary shield doctrine, a doctrine not at issue in *Green*.[13] None of the cases Plaintiffs cite make any reference to *Green*. While it is true that Connecticut courts have concluded the state's long-arm statute does not

---

[12] Plaintiffs erroneously rely on a habeas case, *Abner v. Sec'y of DHS*, to argue Chadbourne is subject to jurisdiction. Opp'n at 64-65. *Abner* is inapposite as Chadbourne was sued in his *official* capacity in that case and the court examined whether it could exercise jurisdiction over Chadbourne's governmental *office*, not him personally. *See Abner,* No. 06-308, 2006 WL 1699607, *4-5 (D. Conn. June 19, 2006). It is well-established that mere supervision over governmental officers and employees is insufficient to establish jurisdiction over a government employee in his *personal* capacity. *See Green v. McCall*, 710 F.2d 29, 32-33 (2d Cir. 1983); *Nwanze v. Philip Morris Inc.*, 100 F. Supp. 2d 215, 220 (S.D.N.Y. 2000).

[13] The fiduciary shield doctrine protects a person from jurisdiction if his activities in the forum were solely in a "corporate capacity." *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 44 (N.Y. 1988). The doctrine rests on the notion that it is unfair to subject a corporate employee to suit in a forum when his only contacts with the forum were taken on behalf of her employer. *Id.*

embrace the fiduciary shield doctrine, *see, e.g., Vertrue Inc.*, 429 F. Supp. 2d at 490-91, it does

not follow that this "discredits" *Green*. Opp'n p. 66. *Green* addressed a different question:

whether an agent in the forum must represent a government official in his personal capacity,

rather than in his official capacity, for the agent's acts to determine personal jurisdiction over the

non-resident official. *See Green*, 710 F.2d at 31. The analysis in *Green* is consistent with cases

decided both before and after *Green* which hold that an agent's activities in the forum are

sufficient to confer jurisdiction over a non-resident defendant where the activities "'were for the

*benefit of* and with the knowledge and consent of'" the non-resident defendant. *Mario Valente

Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*, 264 F.3d 32, 36 (2d Cir. 2001) (quoting

*Kreutter*, 522 N.E.2d at 44) (emphasis added); *see also Grove Press v. Angleton*, 649 F.2d 121,

122 (2d Cir. 1981). *Green* and other cases involving government officials sued in their personal

capacity all focus on whether the officials received a personal benefit from the conduct of in-

state government employees. *See Green*, 710 F.2d at 34; *Barbera v. Smith*, 654 F. Supp. 386,

393-94 (S.D.N.Y. 1987); *Barrett v. United States*, 646 F. Supp. 1345, 1351-52 (S.D.N.Y. 1986).

   In the end, Plaintiffs have not cited a single case that even questions the reasoning in

*Green*, much less a case that states *Green* has been abrogated. Courts in the Second Circuit and

elsewhere continue to rely on *Green* in addressing personal jurisdiction over government

officials sued in their personal capacity. *See, e.g., Nwanze*, 100 F. Supp. 2d at 220; *Robinson v.

Military Overseas Sales Corp.*, 827 F. Supp. 915, 925 (E.D.N.Y. 1993); *Kaufmann v. United

States*, 840 F. Supp. 641, 650 (E.D. Wis. 1993). Plaintiff's attack on *Green* is unfounded.[14]

---

[14] Plaintiffs' reliance on the short personal jurisdiction discussion in the *Arar v. Ashcroft* panel decision, which does not mention *Green*, is of no moment because *Arar* contained allegations that the non-forum defendants made the specific decision to render Arar to Syria. 532 F.3d at 175. There is no similar allegation in this case that the non-resident Defendants told any Connecticut-based Defendant how to enter Plaintiffs' homes or what to do once inside.

**3. Section 52-59b(a)(3).** Plaintiffs' argument that the defendants regularly do business or engage in a persistent course of conduct in Connecticut is easily dispatched. First, Plaintiffs do not even argue that Myers or Torres regularly engage in business activities or a persistent course of conduct in Connecticut. And while they argue Chadbourne and Martin do so, the argument is premised entirely on the assertions in the brief that this Court may not consider.[15] *See supra* pp. 1, 11. Moreover, Plaintiffs do not contend that their cause of action arose from the impermissibly asserted actions of Chadbourne and Martin. There is no jurisdiction unless the cause of action arises from "the acts enumerated" in the statute. Conn. Gen. Stat. § 52-59b(a).

**4. Section 52-59b(a)(5).** Plaintiffs' argument that jurisdiction is proper because the Defendants used a computer or computer network in Connecticut fails because the argument is premised on unalleged facts and speculation. As explained *supra*, Plaintiffs cannot rely on the assertions in their opposition that Chadbourne and Martin had regular email communications with the Hartford office as those assertions are not alleged in the complaint. The same is true for the assertion that Torres "approved the plan electronically via a computer network." Opp'n at 68. The complaint does not contain any such allegation.[16] But even if Plaintiffs had included these assertions in their complaint, a prima facie case for jurisdiction would still be lacking. Section 52-59b(a)(5) requires use of a computer or computer network "located within the state." None of plaintiffs assertions, improper or not, establish that any Defendant used a computer or computer

---

[15] Even if the assertions could be considered, this Court has held that similar conduct does not qualify as "regularly" conducting business or a "persistent course of conduct." *See Vertrue Inc.*, 429 F. Supp. at 494 (meetings in forum to negotiate an agreement and "consistent contact" via phone and mail after agreement executed did not constitute regularly soliciting business or a persistent course of conduct); *A v. Weiss*, 121 F. Supp. 2d 718, 722-23 (D. Conn 2000) (director of a university program who supervised staff in Connecticut and communicated with plaintiffs located in Connecticut via mail and phone did not engage in a persistent course of conduct).

[16] Plaintiffs aver no facts whatsoever concerning Myers, in either their opposition or their complaint, that would subject her to personal jurisdiction under § 52-59b(a)(5).

network located within Connecticut. The most that can reasonably be inferred from Plaintiffs'

improper assertions is that the Defendants used computers or computer networks located in

Massachusetts and Washington, DC. This is insufficient to establish jurisdiction. And once

again, Plaintiffs do not assert that that their claims arise from the use of computers or computers

networks, which is a statutory requisite. *See* Conn. Gen. Stat. § 52-59b(a).

### B. Because the non-resident Defendants did not specifically aim any conduct at Connecticut, due process prohibits the exercise of jurisdiction.

Defendants identified in their opening brief at pages 18-19 a legion of case law which

holds that due process precludes the exercise of jurisdiction over a federal official based solely

on enforcement of a national policy or program. Plaintiffs try to side-step these cases by once

again making assertions not alleged in the complaint. They assert that Myers and Torres were

"directly and personally involved in planning and implement[ing]" the June 6 operation. Opp'n

at 70. But Plaintiffs have only alleged that Myers may have received a note on June 5, 2007,

advising her of the operation, TAC ¶ 315-16, and that Torres "reviewed and approved" the

operation plan. *Id.* ¶ 311. No further involvement in the operation is alleged against these

Defendants. Nor does the complaint support Plaintiffs' assertion that "Chadbourne and Martin

played a direct and personal role in the execution of the" operation. Opp'n at 71. Indeed,

Plaintiffs do not cite the complaint to support this assertion. Rather, they cite the improper

assertions concerning purported visits to and communications with Connecticut—assertions that

this Court may not consider. And even so, none of those improper assertions contend that

Chadbourne or Martin were present during the execution of the operation or instructed any

Connecticut-based ICE employee how to execute the operation. All this considered, it is apparent

that Plaintiffs' contention that each of the non-resident Defendants "had a direct role in the day-

to-day operations of the HARFOT, and had a personal role in the execution of the" operation,

Opp'n at 72, is a gross misrepresentation of their own allegations.

The complaint allegations that Plaintiffs actually cite in their opposition all refer to the

management and implementation of a national policy. *See* Opp'n at 70, citing, *inter alia*, TAC ¶¶

260-61 (changes to national policy), ¶265 (memo sent to all field offices in the United States), ¶

270 (conferral between Torres and Myers on changes to national policy), ¶ 284 (press releases

concerning national policy). These allegations are insufficient to show that the non-resident

Defendants "purposefully availed" themselves of the "privilege of conducting activities within" a

state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Like the plaintiffs in the cases

cited by Defendants, Plaintiffs here are seeking to hold senior, supervisory officials responsible

for torts that allegedly resulted from oversight duties concerning a national program. Even where

a federal official has direct contact with the forum or the plaintiff, courts have refused to exercise

personal jurisdiction where the contact related to national program or policy directives. *See, e.g.,*

*Hill v. Pugh*, 75 Fed App'x 715, 719 (10th Cir 2003) (defendant decided who was housed at

particular prison); *Mahmud v. Oberman*, 508 F. Supp. 2d 1294, 1302, n.7 (N.D. Ga. 2007)

(defendant sent license revocation letter to plaintiff); *Claasen v. Brown*, No. 94-1018, 1996 WL

79490, *1-2 (D.D.C. Feb. 16, 1996) (defendants prepared documents for submission to senior

personnel in the forum). Likewise, where senior federal officials allegedly adopted a national

policy that required subordinates to treat a group of persons a particular way, courts have refused

to exercise jurisdiction. *See Rank v. Hamm*, No. 2:04-997, 2007 WL 894565, *3, 12 (S.D.W.Va.

2007). In this case, the non-resident Defendants are even further removed from the Plaintiffs and

their alleged injuries, as there are no allegations that the Defendants had any contacts with the

Plaintiffs or that they instructed the Connecticut-based ICE defendants how to enter the

Plaintiffs' homes or how to treat them once inside.[17] The Defendants' limited contacts with Connecticut occurred solely in their capacity as supervisors managing a national program. This is not enough to establish personal jurisdiction consistent with due process.

Finally, Plaintiffs ignore their own theory of liability against the non-resident Defendants when they contend that their claims against those Defendants are not premised on a failure to act. *See* Opp'n at 72-73. As the Plaintiffs explain elsewhere in their opposition, the senior ICE officials "failed to act in the face of known problems" and the "Supervisory Defendants' inaction proximately resulted in the underlying constitutional violation." Opp'n at 42, 43. While Torres and Chadbourne may have approved the operation plan, there is no allegation that the plan stated that consent would not be obtained prior to entering homes or that individuals would be targeted based solely on their race. And Plaintiffs do not even allege that Myers or Martin played a role in approving the plan. Plaintiffs' claims do not "arise[] out of or relate[] to" the Defendants limited contacts with Connecticut, which is a prerequisite to establishing specific jurisdiction consistent with due process. *Chaiken v. VV Publishing Corp.*, 119 F.3d 1018, 1028 (2d Cir. 1997). Rather, the alleged "conduct" by the non-resident Defendants that gives rise to Plaintiffs' claims is their failure to call-off the operation despite purported constitutional violations in other instances and supposed inadequate training. *See* TAC ¶¶ 298, 308-09, 320.  As explained in Defendants' opening brief at 21-22, due process precludes exercising jurisdiction based on a failure to act.

## V.     Plaintiffs Fail to Allege Facts Demonstrating Personal Involvement of the Supervisory Defendants in the Alleged Constitutional Violations.

The specific harm alleged in the Complaint is that immigration officers entered residences without a warrant or consent and arrested individuals without probable cause. The law

---

[17] For these reasons, the Ninth Circuit case Plaintiffs cite in footnote 67 is inapposite, as the defendant in that case instructed local authorities to detain the plaintiff and federal policy did not require detention. *See Ibrahim v. DHS*, 538 F.3d 1250, 1253, 58-59 (9th Cir. 2008).

is well-settled (and Plaintiffs do not contest) that the personal participation inquiry "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir.1988); *Poe v. Leonard*, 282 F.3d 123, 134 (2d Cir. 2002) ("The qualified immunity analysis depends upon an individualized determination of the misconduct alleged."). As a result, Plaintiffs "must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008). Although Plaintiffs rely upon a variety of legal theories in an attempt to establish supervisory liability, they fail to allege facts demonstrating that any supervisory defendant was personally responsible for the alleged Fourth Amendment violations in this case.[18]

### A.     Plaintiffs have not alleged facts demonstrating a causal connection between the alleged "arrest quota" policy and the Fourth Amendment violations.

Plaintiffs contend that the Supervisory Defendants (Myers, Torres, Chadbourne, Martin and Sullivan) created or allowed the continuation of a policy—the so-called "arrest quotas"—that caused the Fourth Amendment violations in this case. The *only* facts Plaintiffs allege in support of this theory are:

- John Torres instituted a quota system, requiring each fugitive operations team ("FOT") to make one thousand arrests per year, putting increased pressure on teams to make arrests of fugitive aliens. TAC ¶¶ 259-263, 328-330.

- Torres amended the policy to allow collateral arrests to count toward the quota, providing incentives for FOTs to make non-fugitive, non-criminal arrests. *Id.* ¶¶ 274-77.

- Julie Myers approved the amendments to the quota policy. She and Torres oversaw a dramatic increase in non-fugitive, non-criminal arrests. *Id.* ¶¶ 271-74.

---

[18] The analysis in this section also applies to Plaintiffs' Fifth Amendment Due Process claim against the Supervisory Defendants, as that claim is predicated on the same allegations as the Fourth Amendment claim.

- The adoption of this policy was met with public criticism, media attention, and lawsuits alleging Fourth Amendment violations by immigration officers. *Id.* ¶¶ 271-74, 294.

- Bruce Chadbourne, Jim Martin, and George Sullivan were responsible for implementing fugitive operations, including Operation Return to Sender, in Connecticut. *Id.* ¶¶ 36-38, 286.

These scant allegations cannot support personal *monetary* liability against the Supervisory Defendants for the specific harm alleged in this case—namely, that officers entered homes without consent and arrested Plaintiffs without probable cause. First, there are no allegations that the policy at issue required or even authorized agents to enter homes without a warrant or consent; nor is there any allegation that the policy directed agents to arrest individuals without probable cause. Rather, the facts Plaintiffs allege are entirely consistent with a lawful and legitimate policy to enforce the federal immigration laws.

Plaintiffs ask the Court to infer—indeed, speculate—that pressure to make arrests caused immigration agents *en masse* to burst into homes and arrest people indiscriminately. However, *Iqbal* teaches that the even the *possibility* agents did so is not enough to state a plausible claim for relief. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2). The complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Here, there are simply no facts connecting the Supervisory Defendants' establishment of a lawful policy with the purported *unlawful* conduct Plaintiffs allege took place at their residences. *See Al-Jundi v. Rockefeller*, 885 F.2d 1060, 1065-66 (2d Cir. 1989) (dismissing constitutional tort claim against governor where plaintiffs failed to allege an affirmative link between the governor's order to retake the prison and the violent acts that occurred during the operation);

20

*Gonzalez v. Reno*, 325 F.3d 1228, 1235-36 (11th Cir. 2003) (dismissing *Bivens* action against supervisory defendants where plaintiffs failed to allege facts demonstrating causal link between valid order to execute arrest warrant and the excessive force used by agents on the scene).

Plaintiffs rely heavily on the argument that the Supervisory Defendants allowed the alleged quota policy to continue despite knowledge of constitutional violations. However, this argument fails for at least two reasons. First, the Complaint contains no allegation of any specific report or lawsuit that put supervisors on notice of a constitutional violation. Once again, Plaintiffs improperly attempt to replead their complaint through their Opposition brief, listing news articles and lawsuits that they claim documented unconstitutional practices by immigration officers. Opp. at 39 n. 32. As explained, the Court may not consider these assertions.

Second, even if the Court could consider these improper assertions, all but one of the articles Plaintiffs cite have nothing to do with the type of enforcement operation at issue in this case. These articles reported on large-scale worksite enforcement operations at businesses suspected of employing illegal aliens.[19] Indeed, one article is not a "report" at all, but an editorial calling for an end to what the author claims is "ethnic cleansing" through immigration policy.[20] Two articles and an editorial about an entirely different type of operation could not have put the Supervisory Defendants on notice of the constitutional violations alleged in *this* case.

---

[19] See Opp. at 39, n. 32 (citing Tad Walch, *Suit targets immigration raid*, Desert Morning News (Salt Lake City), July 22, 2004 (reporting on worksite operation at a manufacturing plant in Provo, Utah); Carol Rose & Christopher Ott, *Inhumane raid was just one of many*, Boston Globe, Mar. 26, 2007 (reporting on worksite operation at a leather manufacturer in New Bedford, Massachusetts); Rood Lee, Op-Ed., *Stop 'aggressive' raids, advocates plead*, The Des Moines Register, Dec. 16, 2006 (opinion editorial concerning worksite operation at a meatpacking plant in Marshalltown, Iowa).

[20] Lee, *Stop 'aggressive' raids, advocates plead*, The Des Moines Register, Dec. 16, 2006.

The cases Plaintiffs cite on the issue of notice are easily distinguishable. In *Vann v. City of New York*, 72 F.3d 1040 (2d Cir. 1995), the Second Circuit confronted "an unusual number" of civil rights complaints regarding a single "violence-prone" officer, who was known to have been involved in numerous instances of verbal and physical abuse before he ultimately assaulted the plaintiff. *Id.* at 1044. The complaints were lodged directly with the officer's immediate supervisors, who failed to meaningfully investigate or forestall further misconduct. *Id.* at 1049-50. In *Meriwether v. Coughlin*, 879 F.2d 1037 (2d Cir. 1989), prison supervisors were found liable for subordinate officers' abuse of inmates who had planned a violent overthrow of the prison. Unlike the present case, however, supervisory liability was predicated on evidence of widespread and "pervasive misconduct"—in particular, evidence that prisoners had been assaulted at three different correctional facilities within a three-week period. *Id.* at 1050-51. Indeed, the evidence of physical abuse was so compelling that the district court found that the abuse of plaintiffs "was so foreseeable that [the supervisory defendants] inaction … rose to the level of deliberate indifference or failure to supervise." *Id.* In *Doe v. Barrett*, No. 3:01-cv-519, 2006 WL 3741825 (D. Conn. Dec. 19, 2006), an inmate filed several formal complaints to prison officials, indicating that a prison counselor had sexually assaulted him on multiple occasions. *Id.* at *9. The plaintiff sufficiently alleged a supervisory liability claim based on these facts, as well allegations that the counselor had previously received a formal reprimand for sexual misconduct. *Id.* Finally, contrary to Plaintiffs' assertion, *White-Ruiz v. City of New York*, No. 93-civ-7233 (S.D.N.Y. Oct. 22, 1996), does *not* hold that service of a complaint naming a supervisor as a defendant is sufficient to show the supervisor's knowledge of constitutional misconduct. Opp'n at 40. In that case, the plaintiff, a police officer, sued the police commissioner and other supervisors for failing to intervene and protect her from harassment and retaliation from other

officers. Supervisory liability was predicated on evidence of plaintiff's multiple complaints to her superiors regarding the retaliatory acts, an internal report detailing widespread corruption in the police department, plaintiff's memorandum to the police commission recounting the pattern of retaliation against her, and a separate civil suit detailing the same acts of misconduct alleged by the plaintiff. *White-Ruiz.* at *2-13. None of these cases is remotely close to the facts of the case at bar, and thus cannot support the extension of supervisory liability in this case.

Finally, the claim that lawsuits put the Defendants on notice of "widespread" constitutional violations is belied by the fact that in at least one of the four lawsuits Plaintiffs cite, the court examined the Fourth Amendment claims and entered summary judgment for the *Defendants* on qualified immunity grounds. *See Arias v. ICE*, No. 07-01959, 2009 WL 2171037 (D. Minn. July 17, 2009). In addition, Plaintiffs cite, as notice of the constitutional violations in this case, a complaint filed under the Freedom of Information Act ("FOIA") for information about the alleged harassment of day-laborers seeking employment in Danbury, Connecticut. The allegations involved in the FOIA proceeding are entirely different from the constitutional injuries alleged in this case, and therefore could not have put any defendant on notice sufficient to support personal liability under *Bivens*.

**B.      Plaintiffs allege no facts demonstrating that Supervisory Defendants were grossly negligent or deliberately indifferent to the alleged risk of constitutional violations.**

The complaint's failure to adequately plead that the Supervisory Defendants had notice of the alleged Fourth Amendment violations is also fatal to Plaintiffs' attempt to impose supervisory liability on theories of gross negligence and deliberate indifference. Both concepts require factual allegations demonstrating that supervisors consciously failed to act despite clear knowledge of constitutional misconduct. *See Beatty v. Davidson*, No. 06-5715, 2010 WL

1407311, at *10 (W.D.N.Y. Mar. 31, 2010) (gross negligence is established where supervisors "knew or should have known of a substantial risk that constitutional rights would be violated due to their lack of supervision, that the officials consciously disregarded the risk by failing to adequately supervise, and that such a disregard caused a constitutional violation committed by subordinates"); *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 127 (2d Cir. 2004) (deliberate indifference requires a showing that the need for better supervision or training was "obvious" and that defendant made no meaningful attempt to prevent the unconstitutional conduct). As discussed, all but one of the articles Plaintiffs improperly reference are unrelated to the type of enforcement operation in this case, and the defendants actually prevailed on the Fourth Amendment claims in one of the lawsuits Plaintiffs claim provided notice of constitutional violations.

Furthermore, the Supervisory Defendants are entitled to qualified immunity if the specific supervisory liability theory on which Plaintiffs seek to hold them liable was not clearly established at the time of the enforcement operation. *See Poe*, 282 F.3d at 135 ("[W]e must determine whether both laws, the law violated by [the subordinate] and the specific supervisory theory under which [plaintiff] wishes to hold [the supervisor] liable, were clearly established"). In keeping with this principle, Plaintiffs must show that it was clearly established that the few unrelated articles and lawsuits they cite were sufficient to put the Supervisory Defendants on notice of a substantial risk that constitutional injuries would occur in this case. Plaintiffs cannot meet this burden, as numerous courts within this Circuit have held that "the receipt of letters or grievances, by itself, does not amount to personal involvement" in a constitutional violation. *Mateo v. Fischer*, No. 08 Civ. 7779, 2010 WL 431229, at *4 (S.D.N.Y. Feb. 8. 2010) (collecting cases); *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (letters complaining of due process

24

violation failed to establish supervisor's personal involvement). Accordingly, the Supervisory Defendants enjoy qualified immunity on Plaintiffs' gross negligence and deliberate indifference theories. [21]

Plaintiffs fall well short of alleging facts demonstrating a causal nexus between the alleged failure to supervise or train line-level immigration officers and the alleged Fourth Amendment violations in this case. First, although the complaint alleges that Julie Myers was the Assistant Secretary of Homeland Security for ICE, TAC ¶ 33, there is no allegation anywhere in the complaint that she directed, supervised, or *was even aware* of the actions of any particular officer who participated in the enforcement operation on June 6, 2007. This glaring omission further underscores the fact that Plaintiffs improperly seek to impose liability on Defendant Myers on a respondeat superior basis. As the Second Circuit has repeatedly held, "liability may not be established against a defendant simply because that defendant was a 'policy maker' at the time unconstitutional acts were committed …." *Brock v. Wright*, 315 F.3d 158, 165 (2d Cir. 2003). As such, Plaintiffs fail to allege facts sufficient to demonstrate Defendant Myers' personal involvement in the alleged Fourth Amendment violations.

Second, there are no allegations demonstrating how better supervision would have prevented the alleged warrantless entries or unlawful arrests in this case. Third, with respect to training, Plaintiffs have not alleged facts showing how the absence of a "national refresher course" was causally related to the alleged Fourth Amendment violations in this case. Plaintiffs

---

[21] Plaintiffs appear to suggest that the Rule 8 pleading standard, as clarified by the Supreme Court in *Iqbal*, has no application to their supervisory liability claims because *Iqbal* was decided two years after the June 6, 2007 enforcement operation. *See* Opp'n at 49. To the extent Plaintiffs are arguing that the Supreme Court's clarification of the pleading standard cannot be applied retroactively, this argument is wrong. *See Petrucelli v. Hasty*, No. 05-cv-2002, 2010 WL 455002, at *2 (E.D.N.Y. Feb. 2, 2010) (applying *Iqbal* and observing that "[i]t is well settled that newly-announced interpretations of law from the United States Supreme Court can apply retroactively.").

have thus failed to allege a specific deficiency in the officers' training and facts showing the

causal relationship between that inadequacy and the constitutional injuries alleged in this case.

*Amnesty America*, 361 F.3d at 129.[22]

**VI.    Plaintiffs Cannot Maintain a "Substantive Due Process" Claim Because the Fourth Amendment Fully Protects Against the Harm Alleged.**

Plaintiffs' "substantive due process" claim asserts that "[t]he retaliation motivating this

raid, reprehensible disregard for basic protections of law, and violative invasions of private

spaces constitutes an abuse of state authority that shocks the conscience and offends even the

most minimal standards of acceptable official behavior. TAC ¶ 349. This claim is founded upon

precisely the same allegations that Plaintiffs rely on to support their Fourth Amendment claim—

namely, that immigration officers entered residences without a warrant or consent, and arrested

individuals without probable cause. Indeed, the facts Plaintiffs allege in support of their

substantive due process claim against the Supervisory Defendants are *identical* to the facts they

allege in their Fourth Amendment claim. *Compare* TAC ¶¶ 325-342 *with* ¶¶ 351-368. Plaintiffs

merely substitute "due process" for "Fourth Amendment" in their attempt to state a substantive

due process claim.

The Supreme Court has repeatedly held "that if a constitutional claim is covered by a

specific constitutional provision, such as the Fourth … Amendment, the claim must be analyzed

under the standard appropriate to that specific provision, not under the rubric of substantive due

process." *United States v. Lanier*, 520 U.S. 259, 272 n. 7 (1997) (citing *Graham v. Connor*, 490

---

[22] Plaintiffs' contention that the training program did not sufficiently instruct officers in "how to conduct residential raids," Opp. at 42, is nothing more than a tautology of Plaintiffs' basic claim—namely, that training was inadequate to prevent constitutional violations during residential enforcement operations. This does not satisfy Plaintiffs' obligation under *Amnesty America* to allege a "specific deficiency" in the training program's instruction of immigration officers. *Amnesty America*, 361 F.3d at 129.

U.S. 386, 395 (1989). This principle forecloses Plaintiffs' substantive due process claim, as the specific harms alleged—warrantless entry and arrest without probable cause—fall squarely within the Fourth Amendment. *See Rich v. United States*, 158 F. Supp. 2d 619, 625 (D. Md. 2001) (*Graham* bars substantive due process claim based on allegations that agents entered and searched Plaintiffs' residence without their consent).

Plaintiffs try to distinguish *Graham* by arguing that their substantive due process claims "are based on the arbitrary nature of irrational arrest quotas and the retaliatory motives behind the Raids, and not just on the fact of their arrests." Opp. at 61, n. 57. This argument fails for at least two reasons. First, in rejecting the argument that an unlawful arrest is actionable as a violation of substantive due process, the Supreme Court observed that it was through "the specific guarantees of the various provisions of the Bill of Rights … that the[] Framers sought to restrict the exercise of arbitrary authority by the Government …." *Albright v. Oliver*, 510 U.S. 266, 273 (1994). Accordingly, the mere characterization of the alleged Fourth Amendment violations in this case as "arbitrary" or "irrational" does not transform the alleged Fourth Amendment violations into substantive due process claims. *See Bryant v. City of New York*, 404 F.3d 128, 135 (2d Cir. 2005) (Fourth Amendment governed false arrest and detention claims despite allegation that conduct was "arbitrary," "capricious," and "discriminatory"). Second, "the arbitrary nature of irrational arrest quotas" is the same theory underlying Plaintiffs' Fourth Amendment claim. *See* TAC ¶¶ 325-342 (alleging that pressure to meet arrest quotas led to unlawful searches and seizures). *Graham* and *Albright* thus preclude Plaintiffs' attempt to recast their Fourth Amendment claim as a separate substantive due process violation.

**VII.    The Allegations Do Not Rise to the Level of a Substantive Due Process Violation.**

Even if *Graham* and *Albright* do not bar the substantive due process claim, the Complaint's allegations fall well short of the behavior required by the substantive due process standard. Such liability attaches only to a narrow range of extreme conduct that is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Lombardi v. Whitman*, 485 F.3d 73, 79 (2d Cir. 2007). "Even conduct considered to be reprehensible may not fall within the narrow range of conscience-shocking conduct that violates substantive due process." *Patterson Collection v. Sullivan*, No. 3:07-cv-0592, 2010 WL 1883424, at *2 (D. Conn. May 7, 2010) (Eginton, J.). Plaintiffs must identify some "conduct intended to injure in some way unjustifiable by any government interest…." *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998). The conduct "must be truly brutal and offensive to human dignity" to support a substantive due process claim. *Lombardi*, 485 F.3d at 79.

Plaintiffs have alleged no conduct meeting the high standard of "truly brutal" acts necessary to state a substantive due process claim. First, with regard to the alleged arrest "quotas," Plaintiffs do not contend that the policy of setting arrest goals was itself unlawful. Opp. at 46. Nor do they claim that Defendants established this policy with an intent to harm Plaintiffs. Rather, they complain that the policy "predictably" led to unconstitutional arrests. However, the claim that Fourth Amendment violations were foreseeable is nothing more than a claim that supervisors were *negligent* in establishing or administering this policy, and courts have repeatedly held that "mere negligence will never give rise to a substantive due process violation." *O'Connor v. Pierson*, 426 F.3d 187, 203 (2d Cir. 2005).

Second, as for the claim of retaliation, there is no allegation that the enforcement operation was motivated by a desire specifically to retaliate against *Plaintiffs*. Rather, the claim

28

running throughout the Complaint is that Defendants "devised" a plan to retaliate against New Haven for enacting the resident ID card program. TAC ¶ 219. Third, the allegation that a single officer stated that the operation would be "fun" is probative of nothing, and can hardly be characterized as brutal or extreme conduct. Fourth, the allegation that supervisors were deliberately indifferent to a perceived need for better supervision and training fails because allegations of omissions or failure to prevent misconduct do not to trigger substantive due process liability. *See Lombardi*, 485 F.3d at 79 ("Only an affirmative act can amount to a violation of substantive due process.").[23] Finally, the allegations that immigration officers woke some Plaintiffs, shoved and "spoke harshly" to a few others, purportedly drew their guns in only one instance (but did not point them at the Plaintiff), and grabbed a minor child "roughly" cannot fairly be described as brutal or egregious conduct in the context of a law enforcement operation. Indeed, it is doubtful that such conduct would have even supported an excessive force claim under the Fourth Amendment. *See Graham*, 490 U.S. at 396 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, ... violates the Fourth Amendment") (internal quotation marks omitted). It is telling that Plaintiffs never attempted to

---

[23] As the Supreme Court observed in *Collins v. City of Harker Heights*, 503 U.S. 115, 127 n. 10 (1992): "Historically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property. *E.g., Davidson v. New Orleans*, 96 U.S. 97 (1878) (assessment of real estate); *Rochin v. California*, 342 U.S. 165 (1952) (stomach pumping); *Bell v. Burson*, 402 U.S. 535 (1971) (suspension of driver's license); *Ingraham v. Wright*, 430 U.S. 651 (1977) (paddling student); *Hudson v. Palmer*, 468 U.S. 517 (1984) (intentional destruction of inmate's property)." The cases Plaintiffs cite in support of their deliberate indifference theory apply only in the exceptional circumstance where the government owes "a special duty of care" to an individual in its charge, *O'Connor*, 426 F.3d at 203, or where the government itself has facilitated and encouraged a *private actor* to harm the plaintiff. *Okin v. Village of Cornwall-On-Hudson Police Dept.*, 577 F.3d 415, 428 (2d Cir. 2009) (applying state-created-danger theory); *Pena v. Deprisco*, 432 F.3d 98, 107-112 (2d Cir. 2005) (same). There are no allegations of a special relationship between Plaintiffs and Defendants; nor are there any allegations of a state-created-danger in this case. Accordingly, Plaintiffs' reliance upon these cases is misplaced.

assert such a claim under the Fourth Amendment's reasonableness standard, which is considerably lower than the "conscience-shocking" standard necessary to establish substantive due process liability. *See McDonald v. Haskins*, 966 F.2d 292, 294 (7th Cir. 1992) (substantive due process standard is "an even higher burden for plaintiffs than the objective reasonableness test"). The Court should therefore dismiss the substantive due process claim.

## VIII.   Plaintiffs Have Not Sufficiently Alleged a Procedural Due Process Violation.

In a mere footnote, Plaintiffs attempt to "clarify" their vague procedural due process claim, alleging that Defendants deprived them of a liberty interest by (1) not apprising Plaintiffs of their legal rights upon arrest, (2) leaving them handcuffed in a van for hours, (3) interviewing them without a lawyer present and refusing requests to make a phone call, (4) coercing them to sign forms in English, and (5) holding them at a detention facility for lengthy periods of time. Opp. at 60, n. 56. None of these allegations supports a procedural due process claim. First, Plaintiffs have not identified any law entitling them to receive *Miranda*-type warnings upon arrest. In fact, courts have observed that "*Miranda* warnings are not applicable in a deportation setting." *Navia-Duran v. INS*, 568 F.2d 803, 808 (1st Cir. 1977). Also, the Fifth Amendment only guarantees Plaintiffs the right to be free from self-incrimination. Plaintiffs point to no authority holding that an officer is subject to civil liability for failing to give a *Miranda* warning. Rather, the Fifth Amendment requires, at most, only that a confession made in the absence of such a warning be excluded from evidence at trial. *See Chavez v. Martinez*, 538 U.S. 760, 767 (2003); *Bennett v. Passic*, 545 F.2d 1260, 1263 (10th Cir. 1976) (officer who fails to give a *Miranda* warning is not subject to liability under § 1983). The same analysis also applies to claims that Plaintiffs were interviewed without a lawyer present,[24] refused the "right" to make a

---

[24] Notably, there is no allegation that any Plaintiff invoked his or her "right" to counsel.

phone call, and coerced into signing forms in English. No authority holds that *Bivens* liability can be predicated on these claims.

Finally, *Graham* and *Albright's* reasoning regarding substantive due process is equally applicable to the procedural due process claims arising out of Plaintiffs' arrest and detention. *See Robinson v. Clemons*, 987 F. Supp. 280, 285 (D. Del. 1998) ("*Albright's* reasoning and holding has been extended to the procedural due process context as well."). The Fourth Amendment's guarantee against arrests without probable cause is the "explicit textual source" of protection against this type of harm. *See Clark v. Dowty*, No. 05-1345, 2007 WL 2022045, at * 7 (D. Conn. July 9, 2005) ("Procedural due process claims are not applicable to an individual prior to arrest."). Accordingly, the procedural due process claim fails as a matter of law.

## IX.    Plaintiffs Fail to Allege Discriminatory Intent Sufficient to Support an Equal Protection Claim.

Plaintiffs make the extraordinary claim that Defendants "targeted" them and participated in the enforcement operation out of a desire to discriminate against Plaintiffs on the basis of their race, ethnicity, or national origin. TAC ¶¶ 344-45. To state a claim for an equal protection violation based on intentional discrimination, Plaintiffs must allege facts showing that the defendants acted with discriminatory purpose. *Iqbal*, 129 S. Ct. at 1948.. The Complaint must contain factual allegations showing that the defendants took adverse action "because of, not merely in spite of" its consequences on a particular group. *Id.*

As with other claims in the Complaint, Plaintiffs liberally use their Opposition brief to embellish allegations that fall well short of the specificity required by *Iqbal*. For example, Plaintiffs now claim that

> Defendants' conduct in Fair Haven on the morning of June 6,
> 2007, involved nothing more than traveling door-to-door and
> apartment-to-apartment in a largely Latino neighborhood and

31

> detaining people who merely *looked* Latino, regardless of whether
> those persons appeared on the target fugitive list.

Opp. at 51. This allegation appears nowhere in the Complaint.[25] Nor does the Complaint—as

Plaintiffs now contend in their brief—anywhere allege that Defendants arrested Plaintiffs

"solely" because they appeared to be Latino. Opp. at 54. Importantly, the validity of Plaintiffs'

equal protection claim depends on the facts Plaintiffs actually alleged in the complaint, not their

*characterization* of what the Complaint alleges.[26]

Focusing on the facts alleged in the Complaint, Plaintiffs clearly have not alleged a

plausible claim that Defendants acted with discriminatory intent. In support of their equal

protection claim, point to the following allegations:

- Richard McCaffrey prepared a "target list" for the operation five days after publication of a *New York Times* article praising New Haven's public safety policies. TAC ¶ 234.

- McCaffrey and Michelle Vetrano-Antuna found a sufficient number of names of immigration fugitives with New Haven addresses in order to justify submitting a plan to their supervisors. *Id.* ¶ 238.

---

[25] Indeed, it is telling that Plaintiffs do not offer a citation to the Complaint for this extraordinary claim.

[26] Plaintiffs urge the Court to speculate that the enforcement operation was somehow motivated by "racial animus" because no Plaintiffs are identified on the target list. *See* Opp'n at 52. Plaintiffs neglect to mention that four of the five residences alleged in the complaint—where Plaintiffs claim that immigration officers unlawfully arrested them—appear on the target list. These residences are Fillmore Street, Peck Street, Barnes Avenue, and Warren Place. *See* Target List, attached as Exhibit B. This fact undermines any inference that the operation was conducted with an intent to discriminate against Plaintiffs on account of race. The Court can consider the target list without converting the Defendants' motion to dismiss into a summary judgment motion, because this document is repeatedly referenced in the complaint and is central to Plaintiffs' constitutional claims. *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] ... which is integral to the complaint, the defendant may produce [it] when attacking the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of its own failure.").

- Immigration officers stopped, detained, investigated, searched, seized and/or arrested the Plaintiffs, doing so knowingly and intentionally, and motivated by a retaliatory animus against people of the Plaintiffs' race, ethnicity, and/or perceived national origin in violation of the equal protection. *Id.* ¶ 344.

- An officer "taunted" one plaintiff's girlfriend by stating that they were going to a concert of famous Mexican singer Juan Gabriel. *Id.* ¶¶ 126-27.

- Officers shoved Plaintiff Yangua-Calva onto his couch and arrested him. *Id.* ¶¶ 131-35.

These allegations hardly support a reasonable inference that Defendants acted with an intent to discriminate against Plaintiffs on the basis of race, ethnicity, or national origin. Indeed, as discussed in Defendants' opening brief at 67, the repeated allegations that Defendants initiated the enforcement operation to "retaliate" against New Haven for enacting immigrant-friendly policies severely *undermines* the already-unsupported claim that the operation launched because of a discriminatory animus against Plaintiffs. Mot. to Dismiss, at 67. The alleged "taunting" comment by a single (unidentified) officer hardly "nudge[s] [Plaintiffs'] claims of invidious discrimination across the line from conceivable to plausible." 129 S. Ct. at 1951. Nor can this stray remark—which does not by itself carry any clear derogatory connotation—give rise to a reasonable inference of discriminatory intent. *See Danzer v. Norden Systems, Inc.*, 151 F.3 50, 56 (2d Cir. 1998) ("[S]tray remarks" alone do not support a discrimination suit."). As with Plaintiffs' Fourth Amendment claim, these allegations do nothing more than permit the "sheer possibility" that Defendants acted with discrimination in mind, *Iqbal*, 129 S. Ct. at 1950, but fail to allege a plausible claim of invidious discrimination. Accordingly, Plaintiffs' equal protection claim fails for insufficient allegations of discriminatory intent.

## CONCLUSION

For the foregoing reasons and those stated in Defendants' opening memorandum of law, the Plaintiffs claims against them should be dismissed.

Dated: October 18, 2010

NORA R. DANNEHY
United States Attorney

DOUGLAS P. MORABITO
Assistant United States Attorney

Respectfully submitted,

TONY WEST
Assistant Attorney General

TIMOTHY P. GARREN
Director, Torts Branch

MARY H. MASON
Senior Trial Counsel, Torts Branch

  _/s/ J. Marcus Meeks_____
JEAN M. CUNNINGHAM
J. MARCUS MEEKS
REGINALD M. SKINNER
Trial Attorneys, Torts Branch
UNITED STATES DEPARTMENT OF JUSTICE
Torts Branch, Civil Division
P. O. Box 7146, Ben Franklin Sta.
Washington, D.C. 20044
(202) 616-4176 (voice)
(202) 616-4314 (fax)
marcus.meeks@usdoj.gov

*Counsel for the Individual-Capacity Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 18, 2010, a copy of foregoing Notice of Appearance was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

    <u>   s/ J. Marcus Meeks        </u>
J. MARCUS MEEKS (D.C. Bar No. 472072)
P.O. Box 7146, Ben Franklin Sta.
Washington, D.C. 20044
Tel: (202) 616-4176
Fax: (202) 616-4314
marcus.meeks@usdoj.gov

35