## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

_____

DIAZ-BERNAL, et al.,                    )
                                        )
        Plaintiffs,              )
                                        )
v.                                      )
                                        )          3:09-cv-1734 (SRU)
MYERS, et al.,                          )
                                        )
        Defendants.              )
_____ )

## MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION BY PLAINTIFFS COLALA-PEÑARRETA AND DIAZ-BERNAL FOR TEMPORARY STAY OF REMOVAL OF PLAINTIFF COLALA-PEÑARRETA AND FOR ISSUANCE OF ORDER TO SHOW CAUSE

**TABLE OF CONTENTS**

**INTRODUCTION** ..................................................................................................1

**FACTS AND PROCEEDINGS** ...........................................................................2

**ARGUMENT**........................................................................................................6

    I.    THIS COURT IS AUTHORIZED TO ISSUE THE TEMPORARY STAY. ....................6

        A.    COURTS HAVE JURISDICTION TO DETERMINE THEIR OWN JURISDICTION.
            ................................................................................................6

        B.    THE CONSTITUTIONAL ACCESS-TO-COURTS DOCTRINE EMPOWERS THIS
        COURT TO ISSUE THE TEMPORARY STAY. ...................................................7

        C.    ARTICLE III EMPOWERS THIS COURT TO ISSUE THE TEMPORARY STAY. 11

        D.    THE ALL WRITS ACT, 28 U.S.C. § 1651, PROVIDES A SEPARATE
        STATUTORY SOURCE OF AUTHORITY FOR THIS COURT TO ISSUE THE
        TEMPORARY STAY. ..................................................................................12

    II.    THE IMMIGRATION AND NATIONALITY ACT DOES NOT STRIP THIS
    COURT'S POWER TO GRANT A TEMPORARY STAY....................................13

        A.    8 U.S.C. § 1252(f) DOES NOT STRIP THIS COURT OF ITS POWER TO ISSUE A
        TEMPORARY STAY. ..................................................................................13

        B.    8 U.S.C. § 1252(g) DOES NOT DIVEST THIS COURT OF ITS POWER TO GRANT
        A TEMPORARY STAY. ...............................................................................14

    III.    THE COURT SHOULD GRANT THE TEMPORARY STAY BECAUSE
    MOVANTS SATISFY THE SUPREME COURT'S FOUR FACTOR TEST FOR A STAY
    OF REMOVAL. ..........................................................................................18

**CONCLUSION** .................................................................................................21

## **<u>INTRODUCTION</u>**

The Defendant United States intends to remove Plaintiff Washington Colala-Peñarreta to Ecuador imminently, notwithstanding his status as a plaintiff in this civil rights case challenging the unconstitutional conduct of the United States and Immigration and Customs Enforcement ("ICE") agents. Mr. Colala-Peñarreta has exhausted his immigration appeals and is subject to a final order of removal, and the United States has recently advised undersigned counsel that it will effectuate his removal in "weeks not months." In order to allow Mr. Colala-Peñarreta to meaningfully pursue his claims in this litigation and to serve as the most important witness for the claims of at least one other plaintiff, his housemate and lead Plaintiff Eduardo Diaz-Bernal, Mr. Colala-Peñarreta and Mr. Diaz-Bernal hereby move this Court for an emergency order temporarily staying Mr. Colala-Peñarreta's removal until the close of trial in the instant case or, in the alternative, until the close of discovery. The movants further request that this Court order the United States to show cause why such relief should not be granted.

A temporary stay of Mr. Colala-Peñarreta's removal by this Court, pending disposition of his meritorious claims in this litigation, is a necessary predicate to the movants' vindication of their legal rights and their ability to obtain accountability from ICE—the very agency that now intends to remove Mr. Colala-Peñarreta—for its unlawful conduct. The Immigration Judge in Mr. Diaz-Bernal's immigration proceedings has already recognized the importance of Mr. Colala-Peñarreta as a witness to the claims of at least one other Plaintiff in this suit, having noted that Mr. Colala-Peñarreta "provided the <u>crucial</u> testimony regarding the immigration agents' entry into" the shared home of the two movants, without a warrant or consent and in egregious violation of the Fourth Amendment. <u>See</u> ECF No. 38-6 at 29 (opinion and order of Immigration Judge) (emphasis added).

1

This Court has the authority to issue orders necessary to protect the integrity of the proceedings before it. That authority includes the power to issue a temporary stay, and the Court should exercise that power in Mr. Colala-Peñarreta's case. This authority stems from several sources, including Article III and the First and Fifth Amendments of the Constitution, as well as the All Writs Act. Each of these sources is a sufficient, independent basis for issuing the requested temporary stay.

## FACTS AND PROCEEDINGS

The Proceedings in Diaz-Bernal v. Myers, No. 3:09-cv-1734

On June 6, 2007 ICE agents went door to door in Fair Haven, a Latino neighborhood in New Haven, raiding homes without warrants or consent, and arrested and detained Mr. Colala-Peñarreta, Mr. Diaz-Bernal, and other residents (including the rest of the Plaintiffs of this case), in violation of the Constitution.

On October 28, 2009, Mr. Colala-Peñarreta and nine other Fair Haven residents unlawfully arrested during the June 6, 2007 raids brought suit under the U.S. Constitution and the Federal Tort Claims Act ("FTCA") for compensatory and declaratory relief. See ECF No. 1. Plaintiffs named as defendants the individual ICE agents that raided their homes, the senior ICE officials who authorized the raids knowing that the raids would likely result in constitutional violations, and the United States.[1]

Plaintiffs, including Mr. Colala-Peñarreta, alleged violations of their Fourth, Fifth, and Tenth Amendment rights. On the morning of June 6, 2007, upon encountering Mr. Colala-Peñarreta outside of his home (which he shared with Mr. Diaz-Bernal), several of the ICE agent Defendants asked for his identification. When Mr. Colala-Peñarreta indicated that his

---

[1] Plaintiffs filed a First Amended Complaint, ECF No. 15, Second Amended Complaint, ECF No. 43, and Third Amended Complaint ("TAC"), ECF No. 46. An eleventh Plaintiff, Mr. Amilcar Soto-Velasquez, joined the Second and Third Amended Complaints.

2

identification was inside, those Defendants handcuffed him and forced him inside and up the stairs. TAC ¶¶ 70, 72; see generally ECF No. 38-6. At the top of the stairs, those Defendants drew their guns and demanded that Mr. Colala-Peñarreta open his locked residence. TAC ¶ 73. At no time did Mr. Colala-Peñarreta or any other resident give consent for the Defendants to enter his apartment, nor did the Defendants possess a warrant. TAC ¶¶ 74-75. Some of the Defendants proceeded to search Mr. Colala-Peñarreta's home with their guns drawn, while others held him. TAC ¶¶ 77, 84. During their search of the house, the raiding officers found Mr. Diaz-Bernal in the bathroom, wearing only shorts and a shirt. TAC ¶¶ 78-79. Without permitting Mr. Diaz-Bernal to put on pants, two Defendants grabbed his arms, forced him into the kitchen, pulled him to the floor, asked him questions, and handcuffed him. TAC ¶¶ 80-83, 85.

After detaining Plaintiffs, including Mr. Colala-Peñarreta and Mr. Diaz-Bernal, the Defendants interviewed them without a lawyer present. TAC ¶¶ 178-180. Defendants subjected Mr. Colala-Peñarreta to approximately sixteen days of detention, during approximately one week of which he had to sleep on the cement floor of a cell. TAC ¶ 192.

Discovery in this case is ongoing, and scheduled to be completed by October 30, 2011. See ECF No. 37. Dispositive motions are scheduled to be filed by December 31, 2011. Id. Defendants have filed partial motions to dismiss, see ECF Nos. 16, 38, 42, 47, 51, 52, which Plaintiffs oppose, see ECF Nos. 27, 63, 75, 94, and on which oral argument is scheduled for October 26, 2010, see ECF No. 89.

Mr. Colala-Peñarreta's Immigration Proceedings

On June 11, 2007, the Department of Homeland Security ("DHS") initiated removal proceedings against Mr. Colala-Peñarreta by filing a Notice to Appear with the Immigration Court. See Glick Decl., Ex. A. Represented at that time by the immigration clinic at the

University of Connecticut School of Law, Mr. Colala-Peñarreta filed an application for cancellation of removal. See Glick Decl., Ex. B. Immigration Judge ("IJ") Philip Verrillo denied that application and ordered that Mr. Colala-Peñarreta be removed to Ecuador. See ECF No. 38-5. After obtaining the assistance of his current counsel, Mr. Colala-Peñarreta timely appealed to the Board of Immigration Appeals ("BIA"), which affirmed the removal. See ECF No. 38-22. Mr. Colala-Peñarreta timely filed a petition for review in the U.S. Court of Appeals for the Second Circuit, moved for a stay of his removal pending review, and moved for leave to proceed in forma pauperis. See Glick Decl., Ex. C. The United States opposed Mr. Colala-Peñarreta's motion for a temporary stay and moved to dismiss the petition for review. See id. On September 15, 2010, the Second Circuit granted the government's motion to dismiss, and denied as moot Mr. Colala-Peñarreta's pending motions for a stay and to proceed in forma pauperis. See Glick Decl., Ex. D.

On October 13, 2010, by telephone, counsel for the United States in the instant civil rights action stated that DHS intended to remove Mr. Colala-Peñarreta in "weeks, not months." See Glick Decl., ¶ 6.  On October 17, 2010, counsel for the United States in the instant civil rights action confirmed in an email that DHS "intends to remove [Mr.] Colala in the ordinary course, without regard to the pending litigation." Glick Decl., Exh. E.

Mr. Diaz-Bernal's Immigration Proceedings

On June 11, 2007, DHS initiated removal proceedings against Mr. Diaz-Bernal, a Plaintiff and movant herein, by filing a Notice to Appear with the Immigration Court. See ECF No. 38-6 at 2. Mr. Diaz-Bernal filed a motion to suppress evidence and terminate his removal proceedings. See id. at 3. On September 4, 2009, based significantly on the testimony of Plaintiff and co-movant Mr. Colala-Peñarreta, IJ Michael Straus granted the motion, concluding that ICE

4

agents' arrest and detention of Mr. Diaz-Bernal egregiously violated his Fourth Amendment rights. See id. at 28-33.[2]

The IJ's opinion repeatedly emphasized Mr. Colala-Peñarreta's credibility and persuasiveness, and the importance of Mr. Colala-Peñarreta's testimony to Mr. Diaz-Bernal's constitutional claims. This was so because Mr. Colala-Peñarreta was at the door when the ICE agents forced their way in, and is thus the necessary eyewitness, whereas Mr. Diaz-Bernal was asleep in his bedroom. The IJ found Mr. Colala-Peñarreta to be a "credible, sincere, and veracious witness[]," id. at 28, and that he "testified in a complete and comprehensive [manner] regarding the material portion of his testimony," id. at 30. Mr. Colala-Peñarreta "provided the crucial testimony regarding the immigration agents' entry into" the home shared by the two Plaintiffs. Id. at 29 (emphasis added). Based on Mr. Colala-Peñarreta's testimony, the IJ found that "the agents entered into [Mr. Diaz-Bernal and Mr. Colala-Peñarreta's] home without consent." Id. at 31. The IJ concluded that a "prima facie showing that [Mr. Diaz-Bernal's] constitutional rights were egregiously violated" had been made. Id. at 32.

Mr. Colala-Peñarreta's Application for a Temporary Stay of Removal

In order to protect his ability to litigate his constitutional claims in the Diaz-Bernal case, and to provide critical testimony in support of Mr. Diaz-Bernal's claims, Mr. Colala-Peñarreta submitted an Application for Stay of Deportation or Removal, or Form I-246, to the ICE Enforcement and Removal Operations ("ERO") office in Hartford, on October 18, 2010, pursuant to 8 C.F.R. § 241.6(a). See Glick Decl., Ex. F. On October 18, 2010, an ICE employee contacted undersigned counsel and directed that Mr. Colala-Peñarreta obtain a new passport and

---

[2] On September 28, 2009, ICE appealed the IJ's decision to the BIA. ECF No. 38-15.

submit it with his application, which he did on October 25, 2010. See Glick Decl., ¶¶ 9-10, Ex. G.

Mr. Colala-Peñarreta's submission of a Form I-246 exhausts all possible administrative avenues for a temporary stay, but does not automatically stay removal. ICE remains free to require that Mr. Colala-Peñarreta surrender for removal at any moment, see 8 C.F.R. § 241.6(a), an event that counsel for the United States herein has twice stated is imminent.

## ARGUMENT

### I.   THIS COURT IS AUTHORIZED TO ISSUE THE TEMPORARY STAY.

The United States may argue that this Court lacks power to enter a temporary stay of removal of Mr. Colala-Peñarreta, but any such contention would be incorrect.

#### A.  COURTS HAVE JURISDICTION TO DETERMINE THEIR OWN JURISDICTION.

The Supreme Court has recognized that "a federal court always has jurisdiction to determine its own jurisdiction." United States v. Ruiz, 536 U.S. 622, 628 (2002) (quoting United States v. United Mine Workers of Am., 330 U.S. 258, 291 (1947)). As discussed below, this Court has the power to grant Mr. Colala-Peñarreta's and Mr. Diaz-Bernal's emergency motion to temporarily stay Mr. Colala-Peñarreta's removal. See infra. However, in the event the Court determines further briefing is needed in order to resolve whether the Court has such jurisdiction and authority, the Court indisputably has the power to issue a stay pendente lite.

While a court must determine the question of jurisdiction "before it reaches the merits of the case before it, it is empowered to issue non-dispositive orders before . . . its ultimate determination on the merits." In re Zyprexa Prods. Liab. Litig., 594 F.3d 113, 126 (2d Cir. 2010) (Kaplan, J., concurring); see also United Mine Workers of Am., 330 U.S. at 290-91 ("Until its judgment declining jurisdiction should be announced, [the court] had authority, from the

6

necessity of the case, to make orders to preserve the existing conditions."). In the event the government contests this Court's power to issue a stay through trial, or the appropriateness of such a stay in this case, there can be no dispute that the Court is empowered to grant a stay pendente lite until it determines its own power.

Courts are necessarily empowered to issue stays pendente lite, under Article III, their inherent powers, and the All Writs Act, 28 U.S.C. § 1651, discussed infra. Under Article III, federal district courts retain the "inherent power" to issue orders necessary to their jurisdiction over a pending case. Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991). Additionally, this Court's inherent judicial power extends to the issuance of stays. See, e.g., Clinton v. Jones, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."). The All Writs Act empowers courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." As the Supreme Court has recognized, a court's decision to issue an order under the All Writs Act is "within the sound discretion of the court." Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 25 (1943). Because the "All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute," Penn. Bureau of Corr. v. U.S. Marshals Serv., 474 U.S. 34, 43 (1985), as is the case here, the Court is within its general power to issue the stay pendente lite under the All Writs Act, Article III and this Court's inherent powers.

## B. THE CONSTITUTIONAL ACCESS-TO-COURTS DOCTRINE EMPOWERS THIS COURT TO ISSUE THE TEMPORARY STAY.

The Constitution requires that litigants have "meaningful access to the courts." Bounds v. Smith, 430 U.S. 817, 824 (1977). When government action thwarts a litigant's ability to vindicate "basic constitutional rights," Wolff v. McDonnell, 418 U.S. 539, 579 (1974), or "fundamental civil rights," Bounds, 430 U.S. at 827, courts are empowered to issue appropriate

7

relief. See also Lewis v. Casey, 518 U.S. 343, 349-50, 354-55 (1996) ("well-established" that courts are to "provide relief to claimants . . . who . . . will imminently suffer . . . actual harm"). Because Defendants' imminent plan to remove Mr. Colala-Peñarreta would deprive him and Mr. Diaz-Bernal of their opportunity to pursue their claims, this Court is authorized to issue the temporary stay pursuant to the constitutional access-to-courts doctrine.

The urgent situation faced by Mr. Colala-Peñarreta and Mr. Diaz-Bernal meets the circumstances under which the Supreme Court has held that a court is empowered to issue relief to plaintiffs denied access to the courts. First, Defendants have taken action that frustrates Plaintiffs' attempt to litigate their constitutional claims. See Christopher v. Harbury, 536 U.S. 403, 413-14 (2002). Second, Plaintiffs have carefully pleaded their constitutional claims. See id. at 415-17 (plaintiff must carefully identify "claim for relief underlying the access-to-courts plea"); TAC (detailing constitutional and statutory claims). Finally, Plaintiffs seek a limited, narrowly-tailored judicial remedy that is within this Court's power to issue. Cf. Lewis, 518 U.S. at 357 (judicial remedies are to be "limited to the inadequacy that produced" plaintiffs' injuries).

Meaningful access to the courts is squarely grounded in the guarantees of the Constitution, including the Fifth Amendment Due Process Clause and the First Amendment. Although courts have articulated various bases for the doctrine, it is indisputably a principle of constitutional significance and cannot be repealed by statute or implication.

The "right of access to the courts is . . . [an] aspect of the [First Amendment] right to petition." BE & K Constr. Co. v. NLRB, 536 U.S. 516, 525 (2002) (internal citation omitted). The Supreme Court has recognized the right to petition as "one of the most precious of the liberties safeguarded by the Bill of Rights." United Mine Workers of Am., Dist. 12 v. Ill. State Bar Ass'n, 389 U.S. 217, 222 (1967). Public access to the courts serves First Amendment

interests by "allow[ing] the public airing of disputed facts." BE & K Constr. Co., 536 U.S. at 525.

The right of meaningful access to the courts is also based in the Due Process Clauses of the Fifth and Fourteenth Amendments. Procunier v. Martinez, 416 U.S. 396, 419 (1974) (access to the courts is a corollary to "constitutional guarantee of due process of law"), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401 (1989); Boddie v. Connecticut, 401 U.S. 371, 380 (1971) (state procedures that foreclose a party's opportunity to be heard may violate the Due Process Clause); Johnson v. Avery, 393 U.S. 483, 498 n.24 (1969) ("Reasonable access to the courts . . . is a right . . . secured by the Constitution . . . .") (citations omitted).

The Supreme Court has repeatedly affirmed that "official action" that "frustrates a plaintiff" from "preparing and filing [a] suit" may give rise to a claim of denied court access. See, e.g., Christopher, 536 U.S at 413. Where a government defendant threatens to take action that would severely constrain litigants' ability to pursue their constitutional claims in a pending case, the doctrine of access to courts is equally implicated. Defendants' imminent removal of Mr. Colala-Peñarreta would impermissibly defeat his and Mr. Diaz-Bernal's ability meaningfully to pursue their constitutional claims. If removed, Mr. Colala-Peñarreta would be unavailable to testify in person at trial in support of his claims and the claims of Mr. Diaz-Bernal, to which he is a critical material witness. See also supra at 5. Mr. Colala-Peñarreta's ability to communicate with his counsel in a timely and affordable manner would also be severely constrained. This Court should not permit Defendants to defeat Plaintiffs' opportunity to pursue their meritorious constitutional claims by allowing Defendants to effectuate Mr. Colala-Peñarreta's removal during the pendency of this case.

In the instant civil rights action, Mr. Colala-Peñarreta and Mr. Diaz-Bernal also satisfy the requirement of having carefully identified the claims for relief that give rise to their present access-to-courts plea. See Christopher, 536 U.S. at 417 (identification of underlying claims for relief is prerequisite for an access-to-courts claim). In their Third Amendment Complaint, Plaintiffs alleged extensive violations of their Fourth, Fifth, and Tenth Amendment rights. See TAC ¶¶ 321-376. These include claims of illegal searches and seizures; unlawful detention; due process violations; and injuries arising from Defendants' interference with local New Haven policies, as well as numerous claims under the FTCA.[3] See also supra at 2-4.

Finally, the remedy that Plaintiffs seek is narrowly tailored to the imminent harm and is fully within this Court's power to issue. Cf. Missouri v. Jenkins, 515 U.S. 70, 88 (1995). The requested stay of removal would operate merely to suspend temporarily the order of removal. Unlike an injunction, the stay is not a "judicial intervention to" "direct[] an actor's conduct." Nken v. Holder, 129 S. Ct. 1749, 1758 (2009) (internal citations omitted). "An alien seeking a stay of removal . . . does not ask for a coercive order against the Government, but rather for the temporary setting aside of the source of the Government's authority to remove." Id.; see also infra at 14.

Under the access-to-courts doctrine, grounded in the First and Fifth Amendments, this Court has the authority to issue a temporary stay to allow Mr. Colala-Peñarreta and Mr. Diaz-Bernal a meaningful opportunity to litigate their well-pleaded constitutional claims.

---

[3] Indeed, the IJ found that in the case of Mr. Diaz-Bernal, the Defendant ICE agents not only violated, but egregiously violated the Fourth Amendment when they entered the home of Mr. Colala-Peñarreta and Mr. Diaz-Bernal without a warrant or consent. See supra at 2-4; ECF No. 38-6 (IJ decision).

### C.  ARTICLE III EMPOWERS THIS COURT TO ISSUE THE TEMPORARY STAY.

Article III of the Constitution provides independent authority for this Court to issue the requested temporary stay. Federal district courts retain the "inherent power" to issue orders necessary to their jurisdiction over a pending case. Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991); see id. at 58 (Scalia, J., dissenting) ("Some elements of that inherent authority are so essential to the [Article III] judicial Power, that they are indefeasible, among which is a court's ability to enter orders protecting the integrity of its proceedings.").

This Court's inherent judicial power extends to the issuance of stays. See, e.g., Clinton v. Jones, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."); Landis v. N. Am. Co., 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court."); see also Carlisle v. United States, 517 U.S. 416, 438 n.1 (1996) (Stevens, J., dissenting) (listing examples of lower federal courts' inherent powers, including "to stay proceedings . . . so as to maintain the orderly processes of justice") (internal citation omitted).

The Supreme Court has affirmed repeatedly that Article III courts' inherent powers can be limited by only the clearest statutes or rules. See, e.g., Chambers, 501 U.S. at 47 ("[W]e do not lightly assume that Congress has intended to depart from established principles such as the scope of a court's inherent power.") (internal citation omitted). Of particular relevance to the relief requested here, the Supreme Court has noted that "[a]bsent the clearest command to the contrary from Congress, federal courts retain their equitable power to issue injunctions . . . ." Califano v. Yamaski, 442 U.S. 682, 705 (1979). Because a temporary stay is a lesser intervention than an injunction, see Nken, 129 S. Ct. at 1758 (contrasting temporary stay of removal with permanent injunction against removal), it follows that lower courts retain the power to issue

11

temporary stays, barring an explicit contrary congressional statement. No such contrary statute or rule exists. See infra at 13-18.

### D. THE ALL WRITS ACT, 28 U.S.C. § 1651, PROVIDES A SEPARATE STATUTORY SOURCE OF AUTHORITY FOR THIS COURT TO ISSUE THE TEMPORARY STAY.

The All Writs Act, 28 U.S.C. § 1651, empowers courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The All Writs Act does not enlarge or expand the jurisdiction of the district court but instead merely confers ancillary authority where jurisdiction is otherwise granted and already lodged in the court. This ancillary authority allows courts to enter orders necessary to safeguard their jurisdiction, when that jurisdiction has another basis. See, e.g., Penn. Bureau of Corr. v. U.S. Marshals Serv., 474 U.S. 34, 41 (1985) (describing Act as filling the interstices of federal judicial power when those gaps threatened to thwart the otherwise proper exercise of federal courts jurisdiction). See also 14A Wright & Miller, Federal Practice and Procedure § 3691 (3d ed. 2010) (Act is "not a base of jurisdiction"); 19 Moore's Federal Practice § 204.02 (Matthew Bender 3d ed. 2010) ("The All Writs Act does not enlarge a court's jurisdiction, as established by the Constitution or by statute."). As the Supreme Court has recognized, "[t]he authority to issue a writ under the All Writs Act is not a font of jurisdiction," United States v. Denedo, 129 S. Ct. 2213, 2222 (2009), nor is it "a source of subject-matter jurisdiction," id. Instead, the "court's power to issue any form of relief, extraordinary or otherwise, is contingent on that court's subject-matter jurisdiction over the case or controversy." Id. at 2221. In this case, the Court has subject-matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 (Bivens and FTCA claims) and 28 U.S.C. § 1346(b) (FTCA claims). As such, this Court has the authority

under the All Writs Act to issue a temporary stay, in connection with its subject-matter

jurisdiction over the underlying claims.

## II.   THE IMMIGRATION AND NATIONALITY ACT DOES NOT STRIP THIS COURT'S POWER TO GRANT A TEMPORARY STAY.

The United States may argue that provisions of the Immigration and Nationality Act

("INA"), 8 U.S.C. §§ 1101 et seq., bar this Court from granting Mr. Colala-Peñarreta a

temporary stay of removal. The government is incorrect, as no statute has divested this Court of

its longstanding power to issue orders ancillary to its underlying subject-matter jurisdiction.

### A.  8 U.S.C. § 1252(f) DOES NOT STRIP THIS COURT OF ITS POWER TO ISSUE A TEMPORARY STAY.

The government may contend that 8 U.S.C. § 1252(f),[4] entitled "Limit on injunctive

relief," strips this Court of its inherent power to issue a temporary stay. Such a contention would

be incorrect.

First, subsection (f)(1) bars all federal courts (except the Supreme Court) from enjoining

or restraining the operation of certain INA provisions. However, subsection (f)(1) "specifies that

this ban does not extend to individual cases." Reno v. Am.-Arab Anti-Discrimination Comm.

("AADC"), 525 U.S. 471, 481-82 (1999). Thus, subsection (f)(1) is not a barrier to Mr. Colala-

Peñarreta because he is an "individual alien against whom proceedings . . . have been initiated."

8 U.S.C. § 1252(f)(1).

---

[4] 8 U.S.C. § 1252(f) reads:
   (1) Regardless of the nature of the action or claim or the identity of the party or parties bringing the
   action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or
   restrain the operation of the provisions of part IV of this subchapter, as amended by the Illegal
   Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the
   application of such provisions to an individual alien against whom proceedings under such part have
   been initiated.
   (2) Notwithstanding any other provision of law, no court shall enjoin the removal of any alien
   pursuant to a final order under this section unless the alien shows by clear and convincing evidence
   that the entry or execution of such order is prohibited as a matter of law.

Nor does subsection (f)(2) deprive this Court of the power to issue a temporary stay, as subsection (f)(2) applies only to permanent prohibitions and the relief Mr. Colala-Peñarreta seeks is only temporary. Whereas subsection (f)(1) limits the ability of the courts to "enjoin or restrain" operation of certain INA provisions, subsection (f)(2) uses only the word "enjoin." As the Second Circuit has found, the "enjoin or restrain" language in subsection (f)(1) contrasts with the use of "enjoin" in subsection (f)(2), "suggesting that 'enjoin' in (f)(2) applies to a permanent prohibition and that 'enjoin or restrain' applies to both a permanent and an interim prohibition." Mohammed v. Reno, 309 F.3d 95, 99 (2d Cir. 2002).

Just last year, the Supreme Court confirmed that the "terminology of subsection (f)(2) does not comfortably cover stays," Nken v. Holder, 129 S. Ct. 1749, 1760 (2009), and that "applying the subsection (f)(2) standard in the stay context results in something that does not remotely look like a stay," id. at 1759. The Supreme Court distinguished between a permanent injunction and a temporary stay, noting that an injunction "is a means by which a court tells someone what to do or not to do" and it does so "with the backing of its full coercive powers," id. at 1757, whereas a stay "simply suspend[s] judicial alteration of the status quo," id. Ultimately, the Supreme Court determined that subsection (f)(2) does not apply to temporary stays. See id. at 1760. Therefore, that subsection does not prohibit this Court from issuing a temporary stay.

## B.   8 U.S.C. § 1252(g) DOES NOT DIVEST THIS COURT OF ITS POWER TO GRANT A TEMPORARY STAY.

The government may also argue that § 1252(g) strips this Court of the power to issue a temporary stay in aid of its undisputed jurisdiction in this case. The provision, entitled "Exclusive jurisdiction," states:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory) . . . no court shall have <u>jurisdiction</u> to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g) (emphasis added). The government would be incorrect.

First, the Supreme Court has adopted a narrow construction of the terms of § 1252(g), holding that it applies only in <u>limited</u> circumstances. <u>See</u> <u>AADC</u>, 525 U.S. 471, 482, 485 n.9 (1999). In <u>AADC</u>, the Court found that this jurisdictional prohibition "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to commence proceedings, adjudicate cases, or execute removal orders." <u>Id.</u> (emphasis in original). In light of the Court's refusal to read § 1252(g) to apply to "the universe of deportation claims," <u>id.</u> at 482, this Court should interpret § 1252(g)'s scope narrowly, consistent with <u>AADC</u>.

Second, §1252(g) must be read together with § 1252(f), as interpreted by <u>Nken</u>, <u>supra</u>. Section 1252(f)(2), as just discussed, establishes the standard for issuance of injunctions in individual removal cases, but does not apply to stays of removal. <u>See</u> <u>Nken,</u> 129 S. Ct. at 1760. If a temporary stay of removal is not authorized by § 1252(f)(2), however, as the Supreme Court held in <u>Nken</u>, and the government were correct that the "notwithstanding any other provision of law" clause of § 1252(g) bars all stays of removal except those authorized by § 1252(f), then the Supreme Court would not and could not have gone on to hold in <u>Nken</u> that a temporary stay of removal can issue. In other words, <u>Nken</u> necessarily holds that § 1252(g) does not bar a stay of removal, even when that stay is issued outside of the authorization established in § 1252(f).

Defendants may nevertheless argue that this motion should be denied because the requested temporary stay falls within the "decision or action" to "execute a removal order," but that interpretation misunderstands the proper scope of §1252(g). By its own title and language, §

1252(g) is addressed exclusively to limiting <u>jurisdiction</u>. Because Congress intended § 1252(g) to bar suits filed in district court whose sole purpose was to stay or enjoin removal proceedings, <u>see, e.g.</u>, <u>AADC</u> (suit in district court to enjoin removal proceedings); <u>Scott v. Napolitano</u>, 618 F. Supp. 2d 186, 191 (E.D.N.Y. 2009) (suit in district court seeking injunctive, mandamus and declaratory relief from final order of removal), the plain text of § 1252(g) speaks only of <u>jurisdiction</u>.

As explained above, it is well settled that the All Writs Act confers ancillary <u>authority</u>, not <u>jurisdiction</u>, in aid of jurisdiction conferred elsewhere. <u>See</u> <u>supra</u> at 12-13. The difference between jurisdiction and ancillary authority is at the heart of All Writs Act jurisprudence. <u>See, e.g.</u>, <u>Penn. Bureau of Corr. v. U.S. Marshals Serv.</u>, 474 U.S. 34, 41-42 (1985). Because the All Writs Act is not itself jurisdictional, the type of jurisdiction stripping § 1252(g) contemplated is not the same type of authority that the All Writs Act confers on courts. It follows that the "notwithstanding any other provision of law (statutory or nonstatutory)" language pertains only to other provisions of law that confer <u>jurisdiction in the first instance</u>, not to the authority that the All Writs Act provides.

While Congress included reference to the All Writs Act in its list of jurisdictional statutes that § 1252(g) sought to repeal, the language is at best ambiguous as to whether Congress also intended to repeal All Writs Act <u>authority</u>, in aid of jurisdiction otherwise established and not contested, such as this Court's jurisdiction over Mr. Colala-Peñarreta and Mr. Diaz-Bernal's FTCA and <u>Bivens</u> claims. In light of the ambiguity, this Court should be especially hesitant to conclude that its authority under the All Writs Act, which dates to the First Judiciary Act of 1789, has been repealed in this case. <u>See</u> Judiciary Act of Sept. 24, 1789, c. 20, § 14, 1 Stat. 73, 81-82.

As discussed, § 1252(g) is at best ambiguous as to its impact, if any, on the authority that the All Writs Act confers. This ambiguity must be resolved in favor of Mr. Colala-Peñarreta and Mr. Diaz-Bernal, because of the rule of lenity courts apply to immigration statutes, and because if § 1252(g) were read to repeal this Court's authority under the All Writs Act, such an interpretation would raise serious constitutional problems.

First, any ambiguity in the statute as to whether it strips this Court of its power under the All Writs Act to issue a temporary stay should be construed in favor of Mr. Colala-Peñarreta and Mr. Diaz-Bernal. The rule of lenity recognizes the "longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the [alleged] alien." INS v. Cardoza-Fonseca, 480 U.S. 421, 449 (1987); see also Dada v. Mukasey, 128 S. Ct. 2307, 2318 (2008) (applying rule of lenity to interpret immigration statute); INS v. St. Cyr, 533 U.S. 289, 320 (2001) (rule of lenity applies to immigration statutes). In this case, the Court should construe the statute in favor of Mr. Colala-Peñarreta and Mr. Diaz-Bernal by rejecting the argument that § 1252(g) bars the Court from issuing a temporary stay.

Second, under the canon of constitutional avoidance, when a court is deciding "which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice. If one of them would raise a multitude of constitutional problems, the other should prevail—whether or not those constitutional problems pertain to the particular litigant before the Court." Clark v. Martinez, 543 U.S. 371, 380-81 (2005); see also El Badrawi v. Dep't of Homeland Sec., 579 F. Supp. 2d 249, 268 (D. Conn. 2008) ("The canon of avoidance is appropriately invoked in interpreting § 1252(g). When there are two possible interpretations of an ambiguous statute, and one of those interpretations would raise a substantial constitutional

17

question, the canon of constitutional avoidance requires a court to choose the statutory

construction that avoids the constitutional issue.").

Construing § 1252(g) as removing the All Writs Act conferral of authority to issue a

temporary stay would impede Mr. Colala-Peñarreta and Mr. Diaz-Bernal's ability to fully and

meaningfully litigate their bona fide constitutional claims as plaintiffs in the present civil rights

litigation. As discussed above, meaningful access to the courts is a guarantee grounded in the

Fifth Amendment Due Process Clause and the First Amendment. These constitutional rights

cannot be repealed by statute or implication. Construing § 1252(g) as stripping the Court of its

power to issue a temporary stay of removal in this instance would impose a serious impediment

to Mr. Colala-Peñarreta's and Mr. Diaz-Bernal's ability to meaningfully access this Court in

order to fully and completely litigate their civil rights claims. Because of the serious

constitutional problem that would be raised by construing § 1252(g) to impede this Court's

power to issue a temporary stay, the Court should avoid such an interpretation.[5]

III.    **THE COURT SHOULD GRANT THE TEMPORARY STAY BECAUSE MOVANTS SATISFY THE SUPREME COURT'S FOUR FACTOR TEST FOR A STAY OF REMOVAL.**

Mr. Colala-Peñarreta and Mr. Diaz-Bernal are entitled to the issuance of a temporary stay

of Mr. Colala-Peñarreta's removal during the pendency of their meritorious civil rights action.

The Supreme Court has held that courts must consider the following four factors in deciding

whether to issue a stay of removal:

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits;
(2) whether the applicant will be irreparably injured absent a stay;

---

[5] Several courts have concluded that they lack jurisdiction over a free-standing action seeking only a stay of removal, but these cases have no application here, where the court's underlying jurisdiction pursuant to 28 U.S.C § 1346 and § 1331 is not in doubt. See, e.g., Scott v. Napolitano, 618 F. Supp. 2d 186, 191 (E.D.N.Y. 2009).

(3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and
(4) where the public interest lies.

Nken, 129 S. Ct. at 1760; see also In re World Trade Ctr. Disaster Site Litig., 503 F.3d 167, 170 (2d Cir. 2007) (the same "well known" factors have long been applied in the Second Circuit).[6] The moving party is not required to show a specific "degree of likelihood of success." Mohammed v. Reno, 309 F.3d 95, 100-01 (2d Cir. 2002). Rather, the factors are weighed against each other such that "the probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay. Simply stated, more of one excuses less of the other." Id. at 101 (internal citations and quotations omitted). Thus, a stay should issue where the moving party "has demonstrated some possibility of success and the balance of hardships tips decidedly in his favor." Thapa v. Gonzales, 460 F.3d 323, 335 (2d Cir. 2006). Additionally, the first two factors are the most critical, and the third and fourth factors are merged here because the government is the opposing party. Nken, 129 S. Ct. at 1761-62.

Plaintiffs Colala-Peñarreta and Diaz-Bernal meet these standards. First, there is a strong likelihood that the two movants Mr. Colala-Peñarreta and Mr. Diaz-Bernal will prevail on their Fourth Amendment claims. Cf. Mohammed, 309 F.3d at 100. Due significantly to Mr. Colala-Peñarreta's "crucial testimony" at Mr. Diaz-Bernal's suppression hearing, see ECF No. 38-6 at 29, the IJ found that Defendant ICE agents committed egregious violations of Mr. Diaz-Bernal's Fourth Amendment rights, see id. at 32. Mr. Colala-Peñarreta was present with Mr. Diaz-Bernal during the illegal entry of their shared home, and was in fact the key eyewitness to that illegal

---

[6] Even if the Court were to conclude that the proper standard on which to evaluate this application for a temporary stay is the traditional one for a preliminary injunction under Fed. R. Civ. P. 65(a), see, e.g., Metro. Taxicab Bd. of Trade v. City of New York, 615 F.3d 152, 156 (2d Cir. 2010), or a temporary restraining order under Fed. R. Civ. P. 65(b), rather than the standard set forth in Nken and Mohammed, the temporary stay should issue because Mr. Colala-Peñarreta and Mr. Diaz-Bernal satisfy those standards as well.

entry while Mr. Diaz-Bernal was asleep inside their home. Id. at 28-32. Both men were equally

harmed by the Defendant ICE agents' actions, and both are likely to succeed on their Fourth

Amendment claims in this case. Based on the same conduct already found by the IJ to have

constituted an egregious violation of Plaintiff Diaz-Bernal's Fourth Amendment rights, both

movants are also likely to succeed on their related FTCA claims for assault and battery, TAC ¶¶

378-381; false arrest, id. ¶¶ 382-384; trespass, id. 385-387; unreasonable interference with the

seclusion of another, id. 388-390; and civil conspiracy, id. 397-400, none of which is the subject

of any pending motion to dismiss.[7]

Second, Mr. Colala-Peñarreta's removal from the United States would irreparably harm

Mr. Colala-Peñarreta and Mr. Diaz-Bernal by frustrating their ability to vindicate their

constitutional rights. Cf. Mohammed, 309 F.3d at 100. Mr. Colala-Peñarreta's "credible, sincere,

and veracious" testimony was fundamental to the Immigration Court's holding that ICE agents

egregiously violated the Fourth Amendment when the agents entered the two movants' home

without a warrant or consent. See ECF No. 38-6 at 28. Mr. Colala-Peñarreta's testimony is

certain to be indispensable in this case as well, both for his own claims as well as for those of

Mr. Diaz-Bernal. Removal of Mr. Colala-Peñarreta in the middle of his meritorious civil rights

action would cause irreparable harm to himself and to Mr. Diaz-Bernal.

Finally, a temporary stay of removal is within the public interest and would not

substantially injure the government. Mr. Colala-Peñarreta has no criminal record, is of good

---

[7] Plaintiffs are also likely to succeed on their Fifth Amendment claims for violations of due process and equal protection, as set forth more fully in Plaintiffs' Opposition to the Individual–Capacity Federal Defendants' Motion to Dismiss, ECF No. 94, and on their FTCA abuse of process claim. As set forth in Plaintiffs' Notice of Supplemental Authority, ECF No. 104, this Court should hold in abeyance the motions of the United States and the Individual defendants to dismiss Plaintiffs' Tenth Amendment claims pending the Supreme Court's decision in Bond v. United States. Should the Supreme Court recognize the right of private individuals to enforce their Tenth Amendment rights directly against the federal government and overturn contrary Second Circuit precedent, Plaintiffs submit that they will be likely to succeed on their Tenth Amendment claims as well.

moral character, and continues to provide financial assistance to his two United States citizen

children. See Glick Decl., Ex. F. Allowing him to temporarily remain in the United States would

not pose a danger to the public. Additionally, the Government will not incur any detention costs,

because Mr. Colala-Peñarreta is currently free on bond set by the Immigration Court. See Glick

Decl., Ex. H. Any conceivable administrative burden resulting from this temporary delay is far

outweighed by the public's interest in ensuring that the federal law enforcement officers do not

violate the constitutional and common-law rights of Connecticut residents.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court temporarily stay

the removal of Mr. Colala-Peñarreta and order the United States to show cause why such stay

should not continue until the completion of trial in this case.

Dated October 25, 2010
New Haven, Connecticut

BY: _____/s/_____
Muneer I. Ahmad, Esq., Federal Bar No. ct28109
Michael J. Wishnie, Esq., Federal Bar No. ct27221
Jeffrey Chase, Law Student Intern
Estella Cisneros, Law Student Intern
Jason Glick, Law Student Intern
Alice Hwang, Law Student Intern
Mark Pedulla, Law Student Intern
Rebecca Scholtz, Law Student Intern
Matthew Vogel, Law Student Intern

THE JEROME N. FRANK LEGAL SERVICES
ORGANIZATION
Yale Law School
P.O. Box 209090
New Haven, Connecticut 06520
Phone: (203) 432-4800

Thomas J. Moloney (ct11765)
Jennifer Gorskie (phv 04154)

21

Jorge Tenreiro (phv 04153)
Melissa Fernandez
Hedayat Heikal
Aliza Hochman

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
(212) 225-2000

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I herby certify that on October 25, 2010, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

BY: _____/s/_____
Michael J. Wishnie, Esq., Federal Bar No. ct27221

JEROME N. FRANK LEGAL SERVICES
ORGANIZATION
Yale Law School
P.O. Box 209090
New Haven, Connecticut 06520
Phone: (203) 432-4800
*Counsel for Plaintiffs*